FILED

2003 OCT 14  A 11: 15

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMNIPOINT COMMUNICATIONS, INC., | : | Civil Action No. |
| and OMNIPOINT FACILITIES | : | |
| NETWORK 2, L.L.C., | : | 3:03-cv-0900(AWT) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE COUNTRY CLUB OF NEW | : | |
| CANAAN, INC., | : | |
| | : | |
| Defendant. | : | OCTOBER 10, 2003 |

## MOTION TO STAY

The Country Club of New Canaan, Inc. ("CCNC"), through
its undersigned counsel, moves the Court to stay the above-
captioned action as the Plaintiffs' claims are not ripe for
adjudication.   At the heart of this case is a dispute over
the enforceability of a lease which by its express terms
has not and may not come into effect.

### I.    Factual Background

1.    This action involves a dispute over the validity
of a purported lease between CCNC and the Plaintiff,

Omnipoint Communications, Inc. and Omnipoint Facilities Network 2, L.L.C. ("Omnipoint"), for a piece of land owned by CCNC ("Premises"). The purpose of the alleged lease is to permit the construction and operation of a telecommunications antenna tower and related facility ("Tower").

2.   The term of the purported lease only begins upon Omnipoint's commencement of construction of the Tower. Specifically, the purported lease states:

### 5.   Term

*The initial term of this Agreement shall be for a period of ten (10) years ("Term") <u>commencing upon the date Lessee begins the construction of its installation</u> ("Commencement Date") and shall terminate on the tenth anniversary of the Commencement Date, unless otherwise provided in Paragraph 11. .... (emphasis added)*

### 11.   Termination

*Lessee may terminate this Agreement without further liability … (v) if Lessee is unable to obtain any required license, permit or approval which may be required for the construction and operation of Lessee's installation, including where the inability is caused by zoning analysis, engineering surveys or structural reports; ....*

A copy of the purported lease is attached as Exhibit 1.

      3.   The purported lease provides Omnipoint with the absolute right to terminate the lease in the event that the necessary regulatory approvals for the Tower are not obtained from the pertinent regulatory agencies or in the event Omnipoint obtains an adverse test result.   Paragraphs 2(b) and 3 of the alleged lease provide, in relevant part:

> **2.  Use of Premises**
>
> (b)  ....   If, however, Lessee is denied a required approval, or is unable to obtain approvals thus making the Premises unsuitable and renders Lessee unable to utilize the Premises, Lessee shall have the exclusive right to terminate this Agreement within its sole discretion, and no further liabilities under this Agreement shall remain in force or effect, including but not limited to the payment of rent.
>
> **3.  Site Testing**
>
> ....   Any materially adverse report or test results may entitle Lessee to terminate this Agreement under Paragraph 11(v).

4.    Not only is the commencement of the lease contingent on the commencement of Omnipoint's construction on the Premises, but Omnipoint cannot commence construction of the Tower until it has obtained regulatory approval from the Connecticut Siting Council ("Siting Council").

5.    Omnipoint has neither commenced construction of its Tower, nor obtained the requisite regulatory approval.

6.    Omnipoint has filed an application with the Connecticut Siting Council for approval of its proposed Tower on the Premises ("Application"). The Siting Council has scheduled its hearings on the Application for November 10, 2003. *(Although the Siting Council has held combined procedural hearings on two proposed New Canaan locations, one of which is the subject of the Application.)*

7.    The Town of New Canaan has appeared in the Siting Council proceedings, and aggressively opposed the Application. In addition, neighbors of the proposed Tower site have also appeared in the Siting Council proceedings and aggressively opposed the Application.

4

8.    Based on the opposition to the Application, it is likely that the Siting Council will not render a decision until January 2004.    Upon information and belief, the deadline for any such decision on the Application is in February 2004.

9.    Although CCNC sought to participate in the Siting Council proceedings, it recently withdrew as a party by filing a Notice of Withdrawal.

10.    There is no immediate hardship to Omnipoint if this matter is stayed until there is a ruling by the Siting Council on the Application.

11.    CCNC has provided Omnipoint with access to the Premises and other parts of its property for Omnipoint to seek its regulatory approval:

(a)    Prior to the date Omnipoint commenced this action, CCNC informed Omnipoint that CCNC would allow Omnipoint access to the Premises.

(b)    Thereafter, on or about May 19, 2003, CCNC allowed Omnipoint access to a CCNC parking lot so that Omnipoint could conduct a "crane test" to refute evidence submitted by a New Canaan citizens' group

opposing Omnipoint's application before the Siting Council.

(c) On May 22, 2003, CCNC allowed Omnipoint access to the Premises to conduct a "balloon test" in connection with its application to the Siting Council.

12. A temporary stay until the Siting Council has ruled on the Application will avoid the unnecessary expenditure of judicial resources litigating the enforceability of a lease that may never come into effect.

## II.   Argument

Omnipoint's claims are not ripe for adjudication and a motion to stay is appropriate. A finding that a case lacks ripeness is warranted when a case or controversy involves uncertain or contingent future events that may not occur. *Amsat Cable Ltd. v. Cablevision of Connecticut Limited Partnership*, 6 F.3d 867, 872 (2d Cir. 1993). In determining whether a matter is ripe for adjudication, courts look to whether the issue is fit for review and to the hardship to the parties of withholding judicial review.

*Id.*    For an alleged hardship to be given consideration it must be immediate and practical, rather than remote and speculative.    *Eastern Connecticut Citizens Action Group v. Dole*, 638 F. Supp. 1297, 1298-99 (D. Conn. 1986).

Furthermore, the issue of whether to stay proceedings is within sound judicial discretion.    *Milk Drivers and Dairy Employees Union Local No. 338 v. Dairymen's League Cooperative Assn., Inc.*, 304 F.2d 913 (2d Cir. 1962).    The power to stay is "*incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants … .*"    *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).    Thus, a stay may be granted when it is in the interests of judicial economy and does not prejudice other litigants.    *Brendle v. Smith*, 46 F. Supp. 522 (S.D.N.Y. 1942).

## A.      Omnipoint's Claim Is Not Ripe For Adjudication As It Is Based Upon Contingent Or Uncertain Future Events.

Omnipoint filed this action to determine the parties' rights and obligations with respect to a purported lease of the Premises.

While the present case is pending, Omnipoint is also a party to proceedings before the Siting Council to determine the suitability of the Premises for the construction of the Tower.   The Siting Council has exclusive jurisdiction to determine the location of facilities such as the Tower Omnipoint seeks to construct on the Premises.   *Town of Westport v. Connecticut Siting Council*, 260 Conn. 266, 272-73 (2002) *(adopting the trial court's decision)*.

By its own terms, the purported lease does not commence until Omnipoint begins construction of its Tower. Omnipoint may not begin construction of the Tower until it has obtained the requisite approval from the Siting Council.   The Siting Council hearings on the substantive merits of the Application are not scheduled to begin until

November 10, 2003, and the Siting Council's decision is not expected until January or February 2004.    Furthermore, in view of the overwhelming community opposition to the Application, there is a distinct possibility that the Siting Council will determine that the Premises are not a suitable location for the Tower.

Given the uncertainty with respect to the outcome of the Application before the Siting Council, Omnipoint's action against CCNC is not ripe for adjudication.    If the Siting Council decides the Premises are an unsuitable location for the Tower, Omnipoint will be unable to commence construction.    In accordance with the language of the purported lease, the lease would never commence and the Court would have no need to determine the rights and obligations of the parties under the alleged lease.    Thus, this action is not ripe for adjudication.

**B.      Omnipoint Will Suffer No Hardship By A Three-Month Delay In Judicial Review Of This Action As Omnipoint's Claims Are Remote And Speculative.**

Omnipoint would suffer no immediate hardship if this Court were to delay temporary adjudication of this action. Omnipoint's Application to the Siting Council is moving forward unimpeded by CCNC. As Omnipoint must obtain Siting Council approval before the purported lease would even begin, Omnipoint will not suffer hardship if this Court delayed for a few months judicial review. CCNC is no longer a party to the Siting Council proceeding, and CCNC has given Omnipoint access to the Premises in order for Omnipoint to seek its regulatory approval.

Furthermore, any claims of damages by Omnipoint are remote and speculative, as the Siting Council will not begin to hear testimony specific to the Premises until November 10, 2003. Given the absence of any realistic immediate claim of damages, Omnipoint will suffer no hardship if this Court delays judicial review.

**C.    Granting A Stay Is Justified And Necessary, And In The Interest Of Judicial Economy.**

If the Siting Council were to deny the Application to construct the Tower on the Premises, any decision made by this Court would be rendered meaningless, as neither party would have any incentive to enforce the purported lease. Nevertheless, Omnipoint has persisted in pursuing this litigation with the knowledge that it may be completely unnecessary.   During the course of this action, CCNC has been forced to expend significant resources in defending itself.   To force CCNC to continue to expend resources in contesting an action that may well be rendered meaningless is an unnecessary hardship.

Meanwhile, as discussed above, Omnipoint stands to suffer no hardship from a stay of these proceedings. Throughout this litigation, CCNC has given Omnipoint access to the Premises to enable Omnipoint to pursue its regulatory approval.   CCNC has also, in the interest of

judicial economy, attempted in good faith to resolve this issue without court involvement.  Given the current status of Omnipoint's pending application for regulatory approval and the fact that a decision is expected no later than February 2004, Omnipoint would not suffer any hardship by a temporary stay of these proceedings.

In view of these facts, CCNC respectfully requests that the Court issue a temporary stay of this action until the Siting Council has ruled on Omnipoint's Application.

Dated at Darien, Connecticut this 10th day of October, 2003.

THE DEFENDANT
THE COUNTRY CLUB OF NEW CANAAN, INC.

BY: _____

MARK R. CARTA (ct-06645)
Rucci, Burnham, Carta & Edelberg, LLP
30 Old Kings Highway South
Post Office Box 1107
Darien, Connecticut 06820
Telephone (203) 899-3300
Facsimile (203) 655-4302
Email: mcarta@rbce.com

# CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing Motion to Stay was sent, U.S. mail, postage prepaid, on this 10th day of October, 2003, to the following:

> Dennis F. Kerrigan, Jr., Esq.
> LeBoeuf, Lamb, Green & MacRae
> Goodwin Square - 225 Asylum Street
> Hartford, Connecticut 06103

_____
**MARK R. CARTA (ct-06645)**