

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMNIPOINT COMMUNICATIONS, INC., and OMNIPOINT FACILITIES NETWORK 2, L.L.C., | : : : | Civil Action No. 3:03-cv-0900(AWT) |
| Plaintiffs, | : : | |
| vs. | : : : | |
| THE COUNTY CLUB OF NEW CANAAN, INC., | : : : | |
| Defendant. | : | OCTOBER 23, 2003 |

## MOTION TO DISMISS

The Country Club of New Canaan, Inc. ("CCNC"), moves the Court to dismiss the above-captioned action as the Plaintiffs' claims are not ripe for adjudication. At the heart of this case is a dispute over the enforceability of a lease which by its express terms has not and may not come into effect.

I.   Factual Background

1.   This action involves a dispute over the validity of a purported lease ("Lease") between CCNC and the

Plaintiff, Omnipoint Communications, Inc. and Omnipoint Facilities Network 2, L.L.C. ("Omnipoint"). The subject of the Lease is a 400 sq. ft. parcel of land owned by CCNC ("Premises"). The stated purpose of the Lease was to permit the construction and operation of a 110 foot telecommunications antenna tower and related facility ("Tower"). *(See the accompanying Affidavit of William Heyn dated October 22, 2003 ("Aff'd") at ¶s 4 and 6).*

2. The term of the Lease only begins upon Omnipoint's commencement of the construction of the Tower. Specifically, the Lease states:

> **5. Term**
>
> *The initial term of this Agreement shall be for a period of ten (10) years ("Term")* <u>*commencing upon the date Lessee begins the construction of its installation*</u> *("Commencement Date") and shall terminate on the tenth anniversary of the Commencement Date, unless otherwise provided in Paragraph 11. .... (emphasis added)*

> ***11. Termination***
>
> *Lessee may terminate this Agreement without further liability … (v) if Lessee is unable to obtain any required license, permit or approval which may be required for the construction and operation of Lessee's installation, including where the inability is caused by zoning analysis, engineering surveys or structural reports; ....*

(A copy of the Lease is attached to the Aff'd as Exhibit 1).

3. Not only is the commencement of the Lease contingent on the commencement of Omnipoint's construction of the Tower on the Premises, but prior to the commencement of construction of the Tower, Omnipoint must obtain regulatory approval from the Connecticut Siting Council ("Siting Council"). *(Aff'd at ¶s 7 and 8).*

4. To date, Omnipoint has neither obtained regulatory approval from the Siting Council, nor has it begun the construction of the Tower. *(Aff'd at ¶ 9).*

5. Omnipoint has filed an application with the Siting Council for approval of its proposed Tower on the Premises ("Application"). *(Aff'd at ¶ 11).*

6.  The Town of New Canaan has appeared in the Siting Council proceedings, and has aggressively opposed the Application. In addition, neighbors of the proposed Tower site have also appeared in the Siting Council proceedings and have aggressively opposed the Application. *(Aff'd at ¶s 14 and 15).*

7.  Within the past two weeks, the likelihood of Omnipoint receiving the Siting Council's approval has been put into further doubt. On October 7, 2003, the Connecticut Department of Transportation ("DOT") sent a notice to the Siting Council ("Notice") indicating that the DOT's Office of Maintenance must review the locations of all future telecommunications towers. A copy of the Notice is attached to the Aff'd as Exhibit 2. Significantly, the DOT reiterates in the Notice its public safety requirement that all telecommunications towers must be a minimum distance from a State roadway of no less than the height of the tower. *(Aff'd at ¶'s 17 and 18).*

8.  The Premises is contiguous to State roadway 123, therefore, it is physically impossible to construct the 110 foot Tower on the 20' by 20' Premises without violating this DOT mandate. *(Aff'd at ¶'s 16 and 19).*

9.  The Siting Council has scheduled its hearings specific to the Application for November 10, 2003. *(Aff'd at ¶ 20).*

10. Based on the opposition to the Application, it is likely that the Siting Council will not render a decision until January 2004. Upon information and belief, the deadline for any such decision on the Application is in February 2004. *(Aff'd at ¶ 21).*

## II. Argument

Omnipoint's claims are not ripe for adjudication and a motion to dismiss pursuant to *Fed.R.Civ.Pro. 12(b)(1)* is appropriate. "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." See <u>US v. Henry</u>, 325 F.3d 93, 108 (2 Cir.

2003). There are two overlapping principles of ripeness, both concerned with whether a case has been brought prematurely. *See* Simmonds v INS, 326 F.3d 351, 357 (2d. Cir. 2003); MCI v. SNET, 27 F.Supp.2d 326 (D. Conn. 1998) (Thompson, J.). The first is a constitutional requirement found in the "Case and Controversy" clause of Article III which limits the power of the judiciary. *See id*. The second principle of ripeness concerns whether it is prudent for a court to adjudicate a claim when it would be *better* decided later, provided that a party's constitutional rights are not undermined by the delay. *See id*. *"The two prematureness doctrines have often been referred to simply as "ripeness," an understandable usage since a determination that a case is not "ripe," under either doctrine, results in dismissal, either for lack of jurisdiction or pursuant to a refusal to exercise jurisdiction."* Id.

The most commonly cited standard in determining ripeness is found in Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967), that states: *"In determining whether a case is*

*ripe for review, we consider the fitness of the issues for review and the hardship to the parties of withholding review."* Henry, 325 F.3d at 108 (citing Abbott Labs v. Gardner, 387 U.S. 136,149 (1967); see also Simmonds, 326 F.3d at 359 (citing this standard as relevant in determining constitutional and prudential ripeness). In determining whether a case is constitutionally ripe, the Second Circuit has held: "To the extent that issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' [a] conclusion that [the complaining party] will sustain immediate injury … and that such injury would be redressed by the relief requested would appear to satisfy this [constitutional] requirement." See Simmonds 326 F.3d at 358. In determining prudential ripeness, the court conducts a more flexible analysis. See id. at 357. One factor considered in determining prudential ripeness is whether the "case may later turn out to be unnecessary … ." Id.

A finding that a case lacks ripeness is warranted when a case or controversy involves uncertain or contingent future events that may not occur. <u>Amsat Cable Ltd. v. Cablevision of Connecticut Limited Partnership</u>, 6 F.3d 867, 872 (2d Cir. 1993); <u>Mohegans v. U.S.</u>, 184 F. Supp. 2d 198 (D. Conn. 2002) (Arterton, J.)  In determining whether a matter is ripe for adjudication, courts look to whether the issue is fit for review and to the hardship to the parties of withholding judicial review.  <u>Id</u>.  For an alleged hardship to be given consideration, it must be immediate and practical, rather than remote and speculative. <u>Eastern Connecticut Citizens Action Group v. Dole</u>, 638 F. Supp. 1297, 1298-99 (D. Conn. 1986).

Based upon the forgoing, this matter should be dismissed. First, the dispute is not a constitutional "case or controversy."  The enforceability of the Lease is not a ripe dispute, and Omnipoint has and will suffer no immediate injury by dismissal. Second, the rules of prudence require that the case be dismissed.  On the issue

8

of Omnipoint's alleged injuries, it is notable that, despite the disclosure requirements of *Fed.R.Civ.Pro 26(a)(1)(C)*, Omnipoint has identified in its discovery no damages which it has sustained. The court's adjudication will be unnecessary if the Siting Council denies Omnipoint's Application and the Lease never commences.

A.  **Omnipoint's Claim Is Not Ripe For Adjudication As It Is Based Upon Contingent Or Uncertain Future Events, And A Determination Of The Parties' Rights Is Unnecessary And Imprudent**

Omnipoint filed this action to determine the parties' rights and obligations with respect to the Lease. Omnipoint did not, however, address the uncontested fact that the Lease has not and may never commence.

While the present case is pending, Omnipoint is also a party to proceedings before the Siting Council to determine the suitability of the Premises for the construction of the Tower. The Siting Council has exclusive jurisdiction to determine the location of facilities such as the Tower

Omnipoint seeks to construct on the Premises. *Town of Westport v. Connecticut Siting Council*, 260 Conn. 266, 272-73 (2002) (adopting the trial court's decision).

By its own terms, the Lease does not commence until Omnipoint begins construction of its Tower. Omnipoint may not begin construction of the Tower until it has obtained the requisite approval from the Siting Council. The Siting Council hearings addressed exclusively to the substantive merits of the Application are not scheduled to begin until November 10, 2003, and the Siting Council's decision is not expected until January or February 2004.

In view of the overwhelming community opposition to the Application, there is a distinct possibility that the Siting Council will determine that the Premises are not a suitable location for the Tower. Moreover, the Premises defined in the Lease are within 110 feet of State roadway 123. Thus, it is impossible for the Tower to be constructed on the Premises without violating a distinct DOT mandate.

Given the uncertainty over the outcome of the Application before the Siting Council, Omnipoint's action against CCNC is not ripe for adjudication. If the Siting Council decides the Premises are an unsuitable location for the Tower, Omnipoint will be unable to commence construction. In accordance with the language of the Lease, the Lease would never commence, and the Court would have no need to determine the rights and obligations of the parties under the Lease. Thus, this action is not ripe for adjudication.

B.  **Omnipoint Will Suffer No Hardship By A Dismissal Of Its Claims As Its Claims Are Remote And Speculative.**

Omnipoint would suffer no immediate hardship if this Court were to decline to render an advisory opinion on the parties' rights if and when the Lease commences. Omnipoint's Application to the Siting Council is moving forward unimpeded by CCNC. As Omnipoint must obtain Siting Council approval before the Lease would even begin,

Omnipoint will not suffer hardship if this Court declined judicial review at this time.

Furthermore, Omnipoint has asserted no constitutional rights that would warrant the adjudication of its rights under the prudential ripeness line of authority. Indeed, any claims of damages by Omnipoint are remote and speculative, as the Siting Council will not begin to hear testimony specific to the substantive merits of the use of the Premises until November 10, 2003. Given the absence of any realistic immediate claim of damages, Omnipoint will suffer no hardship if this Court dismisses this action. At such time as a true case and controversy arises, if ever, Omnipoint may reinstitute its action without prejudice.

If the Siting Council were to deny the Application to construct the Tower on the Premises, any decision made by this Court would be rendered meaningless, as neither party would have any incentive to enforce the Lease. Nevertheless, Omnipoint has persisted in pursuing this litigation with the knowledge that it may be completely

12

unnecessary. During the course of this action, CCNC has been forced to expend significant resources in defending itself. To force CCNC to continue to expend resources in contesting an action that may well be rendered meaningless is an unnecessary hardship.

In view of these facts, CCNC respectfully requests that the Court dismiss this action pursuant to *Fed.R.Civ.Proc.* 12(b)(1) for lack of subject matter jurisdiction.

Dated at Darien, Connecticut this 23rd day of October, 2003.

                    THE DEFENDANT
                    THE COUNTRY CLUB OF NEW CANAAN, INC.

BY: _____
     MARK R. CARTA (ct-06645)
     Rucci, Burnham, Carta & Edelberg, LLP
     30 Old Kings Highway South
     Post Office Box 1107
     Darien, Connecticut 06820
     Telephone (203) 899-3300
     Facsimile (203) 655-4302
     Email: mcarta@rbce.com

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing Motion to Dismiss was sent, U.S. mail, postage prepaid, on this 23rd day of October, 2003, to the following:

Dennis F. Kerrigan, Jr., Esq.
LeBoeuf, Lamb, Green & MacRae
Goodwin Square - 225 Asylum Street
Hartford, Connecticut 06103

_____
MARK R. CARTA (ct-06645)