## LEASE AGREEMENT    CT11-389A

This Lease Agreement ("Agreement") is entered into between OMNIPOINT COMMUNICATIONS INC., a Delaware corporation, having a principal place of business at 360 Newark-Pompton Turnpike, Wayne, NJ 07470-6641 ("Lessee") and THE COUNTRY CLUB OF NEW CANAAN a corporation, having a principal place of business at 95 Country Club Road, New Canaan 06840 ("Lessor").

**Whereas,** Lessor is the owner of property having a street address of 95 Country Club Road, located in the Town of New Canaan, County of Fairfield, State of Connecticut, and hereafter referred to as the "Property". The Property is also known as Map 33, Block 34, Lot 35 and is more fully described on **Exhibit A** attached hereto and made a part of this Agreement.

In consideration of the mutual covenants contained herein and for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1. Lease       RAWLAND**

**RAWLAND**
Lessor agrees to lease to Lessee approximately 20' x 20' (400) square feet of space on the ground to house radio equipment and up to a 110' monopole for associated antennas and more fully described on **Exhibit B** and hereafter referred to as the "Premises".

**2. Use of Premises**
**(a)** Lessee agrees to use the Premises for the installation, operation and maintenance of Personal Communications Service related equipment ("PCS") and associated antenna ("Installation"). All of Lessee's equipment or other property attached to or otherwise brought onto the Premises shall at all times remain personal property and are not considered fixtures, and at Lessee's option may be removed by Lessee at any time during the term hereof or any renewal terms. In connection therewith, Lessee shall have the right, at its sole cost and expense, to obtain electrical and telephone service from the servicing utility company, including the right to install a separate meter and main breaker, where required. Lessee shall be responsible for the electricity it consumes for its operations at the normal rate charged by the servicing utility company. Lessee and Lessor agree that if an easement is required to obtain electrical power, an acceptable location will be agreed to by Lessor and the servicing utility company.

Upon expiration or termination of this Agreement, Lessee agrees to return the Premises to its original state as of the date of this Lease, ordinary wear and tear and damage from the elements excepted.

**(b)** Lessee shall have the right to use whatever measures it deems reasonably appropriate to install its equipment, provided that it is in compliance with all applicable laws and regulations, subject to other provisions of this Agreement. Lessor agrees to cooperate with Lessee, at Lessee's expense, in making application for and obtaining any local, state, federal licenses, permits and any other approvals which may be required to allow Lessee use of the Premises. Lessee shall employ due diligence to obtain said approvals within a timely manner. If, however, Lessee is denied a required approval, or is unable to obtain approvals thus making the Premises unsuitable and renders Lessee unable to utilize the Premises, Lessee shall have the exclusive right to terminate this Agreement within its sole discretion, and no further liabilities under this Agreement shall remain in force or effect, including but not limited to the payment of rent.

**(c)** Lessee shall have the right to run transmission lines from the equipment area to the antenna location and to run power from the main feed to the PCS equipment, which improvements shall be at Lessee's sole cost and expense. Further, Lessee agrees to perform all improvements in a good and workmanlike manner.

**(d)** Lessor agrees to provide twenty-four (24) hours, seven (7) days a week access to the Premises without charge to Lessee, Lessee's employees or any subcontractors or agents. Lessor acknowledges that the Lessee has such access, which shall remain unimpeded throughout the initial term and any renewal term of this Agreement.

**3. Site Testing**
Lessor acknowledges that Lessee, at its option following full execution of this Agreement, may perform zoning analysis, engineering surveys, structural analysis reports, or any other testing which may be required in order for Lessee to occupy the Premises as more fully described in Paragraph 2 (a), (b) and (c) above. Any materially adverse report or test results may entitle Lessee to terminate this Agreement under Paragraph 11(v).

**4. Interference**
**(a)** Lessee agrees not to cause interference to the radio frequency communication operations of Lessor, Lessor's tenants, or anyone holding an agreement with Lessor to operate on the Property if such equipment is installed prior to the execution of this Agreement.

**(b)** After the execution of this Agreement, Lessor shall not install or permit the installation of any radio equipment interfering with or restricting the operations of Lessee. Lessor shall deem such interference a material breach of this Agreement. Should such interference occur, Lessor shall promptly take all necessary action, at no cost to Lessee, to eliminate the cause of said interference, including, if necessary removing or causing tenant to remove equipment creating said interference.

**(c)** Lessee shall operate its facilities in compliance with all Federal Communications Commission (FCC) regulations.

(c) Lessee shall operate its facilities in compliance with all Federal Communications Commission (FCC) regulations.

## 5. Term

The initial term of this Agreement shall be for a period of ten (10) years ("Term") commencing upon the date Lessee begins the construction of its installation ("Commencement Date") and shall terminate on the tenth anniversary of the Commencement Date, unless otherwise provided in Paragraph 11. Lessee shall have the right to renew the Agreement for three (3) successive five (5) year periods ("Renewal Terms"), upon the same terms and conditions in effect during the Term. Lessee shall exercise its renewal rights by providing written notice to Lessor of its intention to renew at least sixty (60) days prior to the expiration of the Term or any Renewal Term.

## 6. Rent

(a) Lessee agrees to pay to Lessor as rent the sum of THREE THOUSAND FIVE HUNDRED and 00/100 Dollars ($3500) per month ("Rent") within ten business days following the Commencement Date. Should the Commencement Date occur on a day other than the first day of the month during the Term or Renewal Terms, Rent shall be prorated. Rent payments shall be payable to Lessor at 95 Country Club Road, New Canaan 06840.
(b) On each anniversary of the Commencement Date, Rent shall increase in accordance with the Consumer Price Index (CPI) for the New York Metropolitan Statistical Area, or four percent (4%), which ever is greater.
(c) Lessee shall pay as additional rent fifty percent (50%) of any co-location net revenue if applicable.

## 7. Taxes

Lessee agrees to pay any portion of personal property taxes, which may be assessed, upon the Premises as a direct cause of Lessee's Installation. Lessor shall provide evidence of such assessment within a timely manner and Lessee shall have the right to challenge said assessment in the appropriate venue. Lessor shall maintain obligation of all real property taxes.

## 8. Insurance

Lessee, at its sole cost and expense shall provide and maintain, during the Term of this Agreement and any Renewal Terms, One Million and 00/100 Dollars ($1,000,000.00) of single limit liability insurance as well as any worker's compensation insurance if required by applicable state law. Said insurance shall cover Lessee, its employees or agents, against any liability which may arise as a direct result of the actions by Lessee, its employees or agents upon the Premises in connection with Lessee's Installation as described herein. Lessee shall name Lessor as an additional insured on Lessee's insurance policy and provide Lessor with an Insurance Certificate within thirty (30) days of the Commencement Date. Each year thereafter, Lessee agrees to provide Lessor with proper Insurance Certificate renewal.

## 9. Waiver of Subrogation

Lessee and Lessor agree to hold the other party harmless from any claims for damage to any person, or to the Premises or to Lessee's Installation which are covered and provided for in any insurance policies carried by any of the parties and in full force at the time of such claim. Lessee and Lessor shall instruct their respective insurance companies to waive any and all right of recovery by way of subrogation against the other in connection with any damage covered by said insurance policies. As set forth in Paragraph 8, neither Lessee nor Lessor shall be liable to the other for any damage, which may occur that is, covered under each parties' insurance policy.

## 10. Right to Lease and Warranty of Title

Lessor warrants that: (i) Lessor has the sufficient right, title and interest in the Premises to enter into this Agreement; (ii) Lessor has not entered into any agreement with any third party which would preclude or limit Lessor's performance of its obligations under this Agreement; (iii) Lessor owns the property in fee simple and has the right to grant access and use of the Premises; (iv) Lessor shall provide to Lessee quiet and peaceful enjoyment of the Premises.

## 11. Termination

Lessee may terminate this Agreement without further liability on prior written notice to Lessor which shall become effective One Hundred and Twenty (120) days after the date notice is mailed as follows: (i) changes in local or state laws or regulations which adversely affect Lessee's ability to operate; (ii) FCC ruling or regulation which is beyond the control of Lessee and further which renders the Premises unsuitable; (iii) technical reasons, including but not limited to signal interference; (iv) subsequent changes in system design which prohibits Lessee's operation; (v) if Lessee is unable to obtain any required license, permit or approval which may be required for the construction and operation of Lessee's Installation, including where the inability is caused by zoning analysis, engineering surveys or structural reports; and (vi) for economic reasons. If this lease is terminated for any reason, the lessee will remove all equipment including the antenna and associated communication devices, returning the property to it's original state.

## 12. Assignment

Lessee shall have the right to assign or transfer its rights under this Agreement, to any person or business entity which is licensed by the FCC to operate a wireless communications business, is a parent, subsidiary or affiliate of Lessee, controls or is controlled by or under common control with Lessee, is merged or consolidated with Lessee or purchases more than fifty percent (50%) interest in the ownership or assets of Lessee to which the applicable agreement relates. In all other instances, Lessee shall obtain Lessor's prior written consent for assignment. Such consent shall not be unreasonably withheld, conditioned or delayed.

## 13. Default and Right to Cure

Lessor shall have the right to terminate this Agreement by written notice to take effect immediately if Lessee fails to make its rental payment when due and does not cure such failure within ten (10) days of receipt of Lessor's

notice thereof. In addition either party shall have the right to terminate this Agreement on written notice to take effect immediately if the other party (i) fails to perform any other covenant for a period of forty-five (45) days after receipt of notice in accordance with Paragraph 15; or (ii) commits a material breach of this Agreement and fails within forty-five (45) days of the first party's notice thereof to commence curing the breach and continuously and diligently pursues such cure to its completion.

### 14. Collateral Assignment

Lessor hereby (a) consents to the collateral assignment of and granting of a security interest from time to time in favor of any holder of indebtedness borrowed by Lessee ("Lender"), whether now or hereafter existing, in and to all of Lessee's right, title and interest in, to and under this Agreement; (b) agrees to simultaneously provide Lender with a copy of any notice of default under the Agreement sent to Lessee and allow Lender the opportunity to remedy or cure any default as provided for in the Agreement; and (c) agrees to attorn to Lender as if Lender were Lessee under the Agreement upon the written election of Lender so long as any existing default under the Agreement has been cured as provided thereunder. Lessor hereby further agrees to permit Lender to remove from the Property any of the collateral in which Lender has been granted a security interest by Lessee ("Collateral") in accordance with any security documents granted in favor of Lender, provided, however, that Lender shall promptly repair, at Lender's expense, any physical damage to the Property directly caused by said removal.

### 15. Notices

Unless otherwise provided herein, any notice or demand required to be given herein shall be given by certified or registered mail, return receipt requested or reliable overnight courier to the address of Lessee and Lessor as set forth below:

Lessor:

The Country Club of New Canaan
95 Country Club Road
New Canaan, CT 06840

With a copy to:

General Manager
President
Treasurer
All at the above address

Lessee:

Omnipoint Communications Inc.
360 Newark-Pompton Turnpike
Wayne, NJ 07470-6641

With a copy to:

Omnipoint Communications, Inc.
Legal & Regulatory Department
16 Wing Drive
Cedar Knolls, New Jersey 07927

Omnipoint Communications, Inc.
Attn. Lease Management
11 High Point Drive
Wayne, New Jersey 07470

Omnipoint Communications, Inc.
C/O Voicestream Wireless
3650-131st Avenue SE, Suite 200
Bellevue, WA 98006
Attn: PCS Leasing Administrator
With a copy to: Attn: Legal Department

Lessee and Lessor may designate a change of notice address by giving written notice to the other party.

### 16. Amendment

No amendment or modification to any provision of this Agreement shall be valid unless made in writing and agreed to and signed by the appropriate parties who have attested and executed this Agreement.

### 17. Lease Provisions

(a) This Agreement shall be governed by the laws of the State of Connecticut.

(b) All Riders and Exhibits attached hereto are made a material part of this Agreement.

(c) If any provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement shall remain in force and to the fullest extent as permitted by law.

(d) Lessor acknowledges and gives Lessee the right to file a Memorandum of Lease Agreement in the form attached hereto as **Exhibit C** or other similar form in the county office where the Property is located. Should the Property be encumbered by any mortgage or deed of trust, Lessor agrees to assist Lessee in obtaining a non-disturbance and attornment document.

(e) This Lease and the Easement granted herein shall run with the land, and shall be binding upon and inure to the benefit of the parties, their respective successors, personnel representatives and assigns.

(f) Lessee will co-operate with the New Canaan Police Department if they wish to utilize the tower/antenna in their communications system.

**In Witness whereof,** the parties have executed this Agreement on the dates written below the latter of which shall be the Date of Execution.

LESSOR

THE COUNTRY CLUB OF NEW CANAAN
A Connecticut Corporation

By: _James N Barton_
Name: _James N. Barton_
Title: _Treas_
Date: _Sept 22 2000_
Tax ID No.: _____

LESSEE

OMNIPOINT COMMUNICATIONS INC.,
a Delaware Corporation

By: _[signature]_
Name: _M S. Fulton_
Title: _TECHNICAL DIRECTOR_
Date: _JAN 2000_

**EXHIBIT B**

DESCRIPTION OF PREMISES

Page 2 of 2

Exhibit to the Lease Agreement dated _____, 2000, by and between COUNTRY CLUB OF NEW CANAAN, as Lessor, and OMNIPOINT COMMUNICATIONS INC., as Lessee.



**EXHIBIT B**

DESCRIPTION OF PREMISES

Page 1 of 2 (or 1 of 1 if only 1 page LE)

Exhibit to the Lease Agreement dated _____, 2000, by and between COUNTRY CLUB OF NEW CANAAN, as Lessor, and OMNIPOINT COMMUNICATIONS INC., as Lessee.

The Premises is described and/or depicted as follows:



EXHIBIT B

**EXHIBIT C**

MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease Agreement is entered into on this _____ day of _____, 2000, by and between THE COUNTRY CLUB OF NEW CANAAN, a corporation, with an office at 95 Country Club Road, New Canaan, CT 06840, (hereinafter referred to as "Lessor") and OMNIPOINT COMMUNICATIONS INC., a Delaware corporation, with an office at 360 Newark-Pompton Turnpike, Wayne, NJ 07470-6641, (hereinafter referred to as "Lessee").

1. Lessor and Lessee entered into a Standard Lease Agreement ("Agreement") on the _____ day of _____ 2000, for the purpose of installing, operating and maintaining a radio communications facility and other improvements. All of the foregoing are set forth in the Agreement.

2. The term of the Agreement is for ten (10) years commencing on _____, 2000, and ending on __ _____, with three (3) successive five (5) year options to renew.

3. The Property which is the subject of the Agreement is described in **Exhibit A** annexed hereto. The portion of the Land being leased to Lessee ("Premises") is described in **Exhibit B** annexed hereto.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Agreement as of the day and year first above written.

| LESSOR | LESSEE |
|---|---|
| THE COUNTRY CLUB OF NEW CANAAN<br>A Connecticut Corporation | OMNIPOINT COMMUNICATIONS INC.,<br>a Delaware Corporation |
| By: *James N. Barton* | By: *[signature]* |
| Name: *James N. Senton* | Name: M.S. Fulton |
| Title: *Treas* | Title: TECHNICAL DIRECTOR |
| Date: Sept 22, 2000 | Date: JAN 2, 2001 |
| State of CT | |
| County of Fairfield | |

On *Sept 22*, before me, *Patr J Hutchp*, Notary Public, personally appeared (lessor)____ *James Barto*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

*Patri J. Hutchyp* (Seal)
Notary Public

My commission expires: 10-31-02

State of Connecticut

County of Fairfield

On 1/2/01, before me, Maria VanBuskirk, Notary Public, personally appeared (lessee)____ Michael S. Fulton, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

*M[signature]* (Seal)
Notary Public  MARIA VANBUSKIRK
               NOTARY PUBLIC
My commission expires: MY COMMISSION EXPIRES JULY 31, 2002

State of Connecticut
County of Hartford