UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMNIPOINT COMMUNICATIONS INC, and OMNIPOINT FACILITIES NETWORK 2, L.L.C. | : : : |
| Plaintiffs, | : Civil Action No.: |
| | : 303CV0900AWT |
| vs. | : |
| | : |
| THE COUNTRY CLUB OF NEW CANAAN, INC. | : : |
| | : |
| | : |
| Defendant. | : October 27, 2003 |

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

Plaintiffs Omnipoint Communications, Inc., and Omnipoint Facilities Network 2, L.L.C. (collectively, "Omnipoint"), hereby file this Memorandum of Law in Opposition to Defendant's Motion to Stay dated October 10, 2003. (Defendant has also served on Omnipoint a Motion to Dismiss, dated October 23, 2003, raising some of the same issues addressed here. That motion is not addressed here; Omnipoint will respond to it within the time permitted by the Federal Rules.)

Defendant's Motion to Stay is only the latest attempt by Defendant to delay the realization of Omnipoint's rights, in a lawsuit in which Defendant's actions have been characterized by disregard of pleading and discovery deadlines and other dilatory tactics. Omnipoint's rights should not be further put on hold. As explained below, Defendant's argument for a stay is predicated on a claim that Omnipoint's action is not ripe, but this argument is based on a flawed interpretation of the parties' contract and has no merit. Defendant's Motion to Stay should be denied.

**ORAL ARGUMENT REQUESTED**

I.  **BACKGROUND**

Omnipoint commenced this action by Complaint filed on May 21, 2003, seeking to enforce a contract permitting Omnipoint to locate a wireless telecommunications tower facility on Defendant's property (the "Lease") (copy attached as Exhibit 1).[1]

A.  **Omnipoint's Lease**

Pursuant to the Lease, Omnipoint is permitted to erect on a defined area of the Defendant's property (the "Premises") a 110-foot-tall monopole, as well as unmanned equipment on the ground, including an electrical cabinet, which would be shielded from view by a fence and shrubbery.  The Lease is for a period of 10 years, commencing on the date on which Omnipoint begins construction of its installation, and grants to Omnipoint the right to renew the Lease for three successive five-year periods after the expiration of the initial 10-year term.  The Lease specifies a particular amount of monthly rent, in dollars, with rental payments commencing within 10 business days after the commencement of construction of Omnipoint's installation.

The Lease obligates Defendant to "cooperate with Lessee, at Lessee's expense, in making application for and obtaining any local, state, federal licenses, permits and any other approvals which may be required to allow lessee use of the Premises." Lease at ¶ 2(b).  Also, pursuant to Paragraph 2(d) of the Lease, Defendant agreed to "provide twenty-four (24) hours, seven (7) days a week access to the Premises . . . to Lessee, Lessee's employees or any subcontractors or agents."

B.  **Defendant Initially Cooperated After the Lease Was Executed.**

For approximately 29 months after the execution of the Lease by its treasurer, James N. Barton, on September 20, 2000, Defendant, through its club management, led Omnipoint to believe that Defendant would honor its obligations under the Lease.  During 2001, Omnipoint

---

[1] A copy of the Lease was also attached to Defendant's Motion for Stay.

2

sought local zoning approval for the facilities proposed for the Premises and club management provided technical assistance and cooperation to Omnipoint, including allowing engineering professionals to access the Premises and other portions of the Defendant's property to conduct various tests and inspections, including the temporary erection by crane of antennas used to simulate telecommunications signals from the proposed facilities. During 2002, after regulatory authority for such new tower facilities shifted to the Connecticut Siting Council, Omnipoint returned to the Defendant's property in search of alternative site locations to provide more than one option for regulatory consideration, and club management -- including General Manager John Lippke and Board Member Bill Hine -- provided access to the property and attended various site inspections, facilitated by the use of Defendant's golf carts.

After the execution of the Lease by Barton, and during the time that Defendant led Omnipoint to believe it would honor its obligations under the Lease, Omnipoint invested considerable money and resources designing its telecommunications installation to suit the Premises and pursuing regulatory approval of the telecommunications installation at the Premises from, among others, the Connecticut Siting Council and the New Canaan Planning & Zoning Commission.

More than two years had passed since the execution of the Lease when, in March 2003, Defendant, through its legal representative, informed Omnipoint for the first time that it had determined the Lease was "invalid and of no force and effect." Letter, Joseph J. Rucci, Jr. to Stephen J. Humes, dated March 20, 2003, a copy of which is attached hereto as Exhibit 2.

### C. Defendant's Delay of this Litigation Is Well Established.

Since Omnipoint commenced this action in May 2003, Defendant has attempted to delay the fulfillment of Omnipoint's rights, culminating now in an attempt to stall Omnipoint's rights altogether. To give the Court an appreciation of Defendant's foot-dragging and delay to date, a brief procedural history of this lawsuit is presented below.

Defendant's response to Omnipoint's Complaint was due, pursuant to the Federal Rules and the clerk's notation on the summons, on June 10, 2003. <u>Defendant failed to meet the June 10 deadline.</u>

The parties conducted a conference pursuant to Rule 26(f) of the Federal Rules, the results of which were reflected in a draft Form 26(f) scheduling report that (subject to approval of the parties) gave Defendant until August 1, 2003, to file a responsive pleading. A copy of the draft report, sent by e-mail to Defendant's counsel, is attached as Exhibit 3.[2] <u>Defendant failed to meet the August 1 proposed deadline.</u> Defendant filed an answer on October 3, 2003, only after Omnipoint filed a motion for default.

On July 14, 2003, Omnipoint served on Defendant Omnipoint's First Set of Requests for Production. Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant was obligated to produce to Omnipoint the requested documents on or before August 13, 2003. <u>Defendant failed to meet the August 13 deadline.</u> On October 3, 2003 -- after Omnipoint moved for default -- Defendant produced to Omnipoint a packet of documents in response to Omnipoint's request for production.

As noted above, Omnipoint initiated a conference with Defendant pursuant to Rule 26(f), and the results of counsel's tentative agreement were reflected in a draft Form 26(f) report sent to

---

[2] The draft report is authenticated by the Affidavit of Brian O'Donnell, which is attached hereto as Exhibit 4. This affidavit also serves to authenticate Exhibits 2-3 and 5-7 attached hereto.

4

Defendant by e-mail on July 10, 2003. See Exhibit 3. Pursuant to the Local Rules, the parties were obligated to cooperate to compile the Form 26(f) report by July 22, 2003, and submit it to the Court. Omnipoint reminded Defendant twice of this deadline. See e-mail from Brian O'Donnell[3] to Robert F. Maslan, Jr., dated July 10, 2003, attached as Exhibit 5; e-mail from O'Donnell to Maslan dated July 16, 2003, attached as Exhibit 6. <u>Defendant failed to meet the July 22 deadline.</u>

Pursuant to Rule 26(a) of the Federal Rules, Defendant was obligated to make certain disclosures to Omnipoint by July 23, 2003 (which was 14 days after the party's planning conference on July 8, 2003). <u>Defendant failed to meet the July 23 deadline</u>, and in fact has still not made the referenced disclosures.

Now, after attempting for more than four months to delay the progress of Omnipoint's lawsuit, Defendant seeks to stall this lawsuit in its entirety by its Motion to Stay. As explained below, the Motion to Stay is without merit, and should be denied.

## II. ARGUMENT

### A. Standard for Granting of Stay

To prevail in a motion to stay, the applicant must make out a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 256 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to

---

[3] Defendant has argued that Omnipoint's Amended Complaint should be considered a "nullity" because Brian O'Donnell, Esq. had not filed an appearance on behalf of Plaintiffs even thought his name, bar registration number, and business address appeared on the complaint. See Defendant's Motion to Set Aside Default, at 3. n.1. The Local Rules provide that "[c]ounsel entering a case <u>after</u> the filing of the complaint . . . shall file with the Clerk and serve on all parties or their counsel a notice of appearance." Local Rule 5(a) (emphasis added). While not conceding that such appearance is necessary, an appearance is filed herewith, rendering this argument moot.

5

control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-255.

As explained below, the requested stay would work damage to Omnipoint, and Defendant cannot meet the high burden of showing clear "hardship or inequity."

### B. Defendant's Ripeness Argument Is Without Merit.

In support of its requested stay, Defendant claims that Omnipoint's lawsuit is not ripe. See Defendant's Motion to Stay, at 6. In determining whether an action is "ripe" for judicial review, a court must consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).

Defendant's argument with respect to ripeness borders on the frivolous. Defendant argues that: the "term of the purported lease only begins upon Omnipoint's commencement of construction of the Tower"; that Omnipoint cannot commence construction of the tower until it obtains approval of the Connecticut Siting Council ("Siting Council"); and that, therefore, Omnipoint should be barred from litigating Defendant's repudiation of the Lease until after the Siting Council rules on Omnipoint's application. See Defendant's Motion to Stay, at 2, 8-9. Defendant hopes by this argument to escape any consequences of its repudiation of its obligations under the Lease and to further delay the proceedings to Omnipoint's detriment. Defendant's arguments are devoid of merit for several reasons.

#### 1. Magistrate Judge Martinez Has Already Decided that Defendant's Ripeness Argument Lacks Merit.

First, by order dated October 8, 2003, Magistrate Judge Martinez rejected Defendant's assertion that the issues in the present case are not ripe. In denying Defendant's Motion for

6

Extension of Time, Magistrate Judge Martinez wrote, "[t]he defendant's argument that it should not respond until the Siting Council renders its decision, which might not be until next year, does not constitute good cause." Defendant offers no justification for why Magistrate Judge Martinez's decision should be overruled. Defendant instead simply ignores the Magistrate's order. Omnipoint believes that Magistrate Judge Martinez's decision was sound and should not be ignored.

### 2. Defendant's Argument Is Not Supported by the Lease.

Defendant misconstrues Lease language, arguing that the Lease does not even go into effect until Omnipoint begins construction, even though the Lease imposed on Defendant <u>clear pre-construction obligations</u>. Defendant disregards Section 2(b) of the Lease: "Lessor agrees to cooperate with Lessee . . . in making application for and obtaining any local, state, federal licenses, permits and any other approvals which may be required to allow Lessee use of the Premises." Defendant's argument -- that the Lease has not yet gone into effect even though it describes an existing obligation -- is nonsensical.[4]

Defendant also twists the Lease language. The Lease states that the Lease's ten-year <u>term</u> commences only when Omnipoint starts construction at the premises, and that such construction triggers Omnipoint's obligation to pay rent. <u>See</u> Lease, § 5 (emphasis added), and § 6 (Exhibit 1). The cited language plainly indicates that Omnipoint is permitted to use Defendant's property for a ten-year period that starts with construction of the tower -- as opposed to a ten-year period that starts with the signing of the Lease. Defendant twists this language to argue that "<u>commencement</u> of the lease [is] contingent on the commencement of Omnipoint's construction .

---

[4] As discussed below, Defendant actively attempted to undermine Omnipoint's application to the Siting Council by intervening as a party in that proceeding and actively opposing Omnipoint -- <u>exactly the opposite of what Defendant had promised to do when it signed the Lease</u>. In fact, Defendant even urged the Siting Council to deny Omnipoint's application, asserting lack of jurisdiction due to the alleged invalidity of the Lease.

7

. . ." See Motion to Stay, at 4 (emphasis added), and that the Lease is not even in effect. This interpretation is unsupported by the Lease terms, including the pre-construction obligations described above.

Defendant's illogical interpretation of the Lease is also not supported by case law. "To claim that a contract is unenforceable because there remains at any given time, certain obligations characterized as 'conditions precedent,' the failure of which renders a contract unenforceable, would be tantamount to saying that the contract would never be enforceable." Kmart Corp. v. First Hartford Realty Corp., 810 F. Supp. 1316, 1325 (D. Conn. 1993). There, the Court upheld, as valid and enforceable, a lease for store premises that was executed in November 1990 and scheduled to commence in the future, upon completion and delivery of the building and approval of certain drawings. Id. at 1320. The Court rejected the contention that the instrument never ripened into a contract. Id. at 1324. See also Johnson v. Phoenix Mut. Life Ins. Co., 46 Conn. 92, 102 (1878) (present lease commencing in the future is a valid lease).

### 3.     Defendant's Argument Is Internally Inconsistent.

Defendant's argument is internally inconsistent and incoherent. The Lease anticipates that Omnipoint would undertake to obtain regulatory approval to erect a tower <u>on the property specified in the Lease</u>. With the executed Lease in hand, Omnipoint prepared its site plans and other technical materials and approached first the Town of New Canaan and then the Siting Council for regulatory approval of its proposal to construct a telecommunications tower facility <u>on the leased premises</u>.[5] More than two years after Omnipoint had incurred substantial expenses

---

[5] While Omnipoint was pursuing local zoning approval, a process that resulted in protracted delays while the town sought to adopt its own telecommunications regulations, the U.S. Circuit Court of Appeals for the Second Circuit issued a decision that found jurisdiction for siting approval of such telecommunication facilities vested exclusively with the Siting Council instead of municipal land use agencies in Connecticut. See Sprint Spectrum v. Connecticut Siting Council, 274 F.3d 674 (2d Cir. 2001). As a result of that decision, Omnipoint pursued regulatory approval for the proposed telecommunications facility at the Siting Council.

8

in pursuing applicable governmental approvals for the proposed facility, including the expense of completing and filing its certificate application to the Siting Council, Defendant attempted to pull the rug out by flatly asserting to the Siting Council that the Lease was invalid (thereby <u>affirmatively trying to undermine Omnipoint's application to the Siting Council</u> after having promised in the Lease agreement to cooperate to obtain approval).  <u>See</u> Defendant's Notice of Intent to Be Party and Petition for Party Status, dated April 30, 2003, at 2 ("there is no valid lease between CCNC and Omnipoint") (copy attached as Exhibit 7); Letter, Joseph J. Rucci, Jr. to Stephen J. Humes, dated March 20, 2003, "the Lease Agreement is invalid and of no force and effect") (copy attached as Exhibit 2).

Against that background, Defendant now advances the preposterous argument that Omnipoint's ability to enforce its Lease rights must wait, but Omnipoint must continue trying to obtain Siting Council approval to operate a tower on a site where, according to Defendant, Omnipoint has no right to construct a tower.  Contrary to Defendant's suggestions, the Lease and the Siting Council application are interdependent -- Omnipoint relied on the existence of the Lease in deciding to incur the expense of obtaining Siting Council approval for use of <u>the leased premises</u>.  Defendant's repudiation of the Lease must be remedied, and Omnipoint has the right to do so promptly.

As part of the remedy sought here, Omnipoint seeks to enforce Defendant's contractual obligation to cooperate in the effort to obtain regulatory approval.  After having attempted to sabotage Omnipoint's application to the Siting Council, Defendant should take affirmative and unambiguous steps to inform the Siting Council that Defendant supports Omnipoint and seeks approval of Omnipoint's application and Defendant must further cooperate as the situation requires.

### 4. Omnipoint's Lawsuit Does Not Hinge on Siting Council Action.

Defendant is wrong to suggest that Omnipoint's lawsuit would become moot were the Siting Council to deny Omnipoint's application. See Defendant's Motion to Stay, at 11. In addition to specific enforcement of the Lease, Omnipoint also seeks in its complaint money damages for Defendant's failure to comply with its Lease obligation to cooperate in obtaining Siting Council approval. In the event that the Siting Council renders a decision adverse to Omnipoint, Omnipoint may be able to establish that Defendant wrongfully helped bring about such an adverse result despite Defendant's contractually binding promise to cooperate. Omnipoint has already been harmed by the fact that Defendant, which had promised to cooperate in obtaining Siting Council approval, instead did the exact opposite by opposing Omnipoint at the Siting Council. Omnipoint concedes that Omnipoint's damages claim against Defendant might increase substantially if Defendant's conduct contributes to an adverse result from the Siting Council.[6]

### C. Omnipoint Faces Immediate Hardship if this Action Is Stayed.

Defendant's argument that this proceeding should be stayed -- like Defendant's other actions in this case -- is designed primarily to cause delay to Omnipoint. Omnipoint wishes to be able to begin construction of the tower on Defendant's property as soon as possible after Omnipoint obtains Siting Council approval. Omnipoint hopes that such approval will be granted

---

[6] Defendant notes that it has withdrawn its Siting Council opposition. See Defendant's Motion to Stay, at 5, at ¶9. Defendant cannot, however, unring the bell. It remains to be seen whether Defendant made any impact with its assertion before the Siting Council that Omnipoint's future landlord opposed Omnipoint's plans and claimed no valid lease permitted the proposed facilities. The full extent of Defendant's non-compliance with its contractual duty would not be known until Omnipoint conducts additional discovery, if necessary. In any event, Defendant must do more than simply withdraw its Siting Council opposition. Defendant promised to assist in obtaining such approval, and Defendant should be compelled to keep its promise by, at a minimum, affirmatively supporting the proposed facilities while the administrative record is still open at the Siting Council, including at the upcoming hearing on November 10, 2003.

by February 2004.[7] Given that Defendant has flatly stated its intention not to honor the Lease, Omnipoint should not have to <u>begin</u> litigating its Lease rights in mid-2004. Rather, Omnipoint had a right to begin that litigation in May when Defendant materially breached the Lease. Omnipoint now seeks that the litigation be well advanced, if not resolved, once Siting Council approval is obtained.

In addition to the harmful effects of Defendant's dilatory tactics, Omnipoint will also continue incurring substantial economic losses due to a stay. Contrary to Defendant's allegation that "any claims of damages by Omnipoint are remote and speculative," Omnipoint can quantify the considerable time and expense spent in locating this site, negotiating and executing the Lease, and preparing its application for Siting Council approval and shepherding it though the process. See Defendant's Motion to Stay at 10. These expenses will be compounded if Omnipoint has to wait until next year to begin litigating this dispute. Other real losses include: (i) the compounding impacts of lost revenue from the delay in getting the revenue-producing facility on air; (ii) lost/delayed rental income from another carrier which has proposed to sublease space on the facility; and (iii) local damage to Omnipoint's market share through Omnipoint's inability to enlist subscribers to its telecommunications service due to unreliable signal quality in the local New Canaan area. Omnipoint anticipates that its damages here exceed $1 million.

---

[7] Omnipoint declines to join in Defendant's unusual practice of publicly handicapping the Siting Council's likely action with respect to Omnipoint's pending application. Omnipoint rejects Defendant's arguments arising from alleged neighborhood and municipal opposition, however. See Defendant's Motion to Stay, at 9. The Siting Council's statutory obligation is to determine environmental compatibility and public need, not neighborhood popularity. Conn. Gen. Stat. § 16-50p. See e.g., City of New Haven v. Connecticut Siting Council, No. CV-02-0513195S, 2002 WL 31126293 (Conn. Super. Ct. 2002) (appeal withdrawn) (copy attached as Exhibit 8) (Siting Council approved Cross-Sound Cable project despite vigorous opposition from the City of New Haven and the Attorney General). Furthermore, Defendant offers nothing but unsupported -- and speculative -- argument regarding the Siting Council's future actions. This is an attempt to confuse the issues before the Court. Omnipoint urges the Court to reject this ploy.

Defendant asserts that Omnipoint would "suffer no immediate hardship if this Court were to delay temporary adjudication of this action," and asserts as a reason that "Omnipoint's Application to the Siting Council is moving forward unimpeded by CCNC." See Defendant's Motion to Stay, at 10. This statement outright ignores the fact that Defendant has already notified the Siting Council of its belief that the Lease is invalid, moved to become a party to the proceedings in active opposition to Omnipoint (only recently withdrawing as a party) and has breached its obligations under the Lease to "cooperate" with Omnipoint in seeking regulatory approval.

Defendant does not face any hardships in going forward with its defense. Its only stated hardship is the legal fees it has had to expend to defend this suit. See Defendant's Motion to Stay, at 11. This argument is unpersuasive because Defendant will have to incur legal fees whether or not this case is stayed. Defendant holds the mistaken view that this case will immediately end if the Siting Council denies Omnipoint's application. However, as stated above, Omnipoint will litigate to resolution the effects that Defendant's failure to cooperate at the Siting Council -- and, instead, active opposition -- had on Omnipoint's application.

Given the substantial hardships a stay would have on Omnipoint, a weighing of the parties' interests favors the denial of a stay.

**D.      Judicial Economy and Public Policy Interests Will Not Be Served by a Stay.**

Judicial time and resources are not conserved by a stay of these proceedings. A denial of Omnipoint's application before the Siting Council will not render these proceedings moot. As set forth in more detail above, Omnipoint's claims against the Defendant for breach of the Lease will go forward. Thus, judicial resources would be better conserved by continuing to move this action through the process in a timely manner.

12

A granting of the stay will also serve to undermine the public policy behind the Telecommunications Act of 1996, 47 U.S.C. § 332(c), which favors the deployment of new telecommunications technologies, including the PCS wireless telecommunications system at issue here. Said system is necessary to expand the wireless service available to customers in and around New Canaan. In addition, this system advances the "Enhanced-911" initiative, which relies on wireless telecommunications infrastructure to improve emergency communications and public safety in the post-September 11 world in which we live.

### III. CONCLUSION

Based upon the foregoing, Omnipoint respectfully requests that the Court deny Defendant's Motion to Stay.

PLAINTIFFS,
OMNIPOINT COMMUNICATIONS, INC. and
OMNIPOINT FACILITIES NETWORK 2, L.L.C.

By: _____
Dennis F. Kerrigan, Jr. (ct09621)
Stephen J. Humes (ct14065)
Brian O'Donnell (ct16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 293-3500
Facsimile: (860) 293-3555