FILED

2003 NOV -3 P 12:00

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMNIPOINT COMMUNICATIONS, INC., and OMNIPOINT FACILITIES NETWORK 2, L.L.C., | : : : | Civil Action No. 3:03-cv-0900(AWT) |
| Plaintiffs, | : : | |
| vs. | : : | |
| THE COUNTRY CLUB OF NEW CANAAN, INC., | : : : | |
| Defendant. | : | OCTOBER 31, 2003 |

### REPLY TO
### OMNIPOINT'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

The Country Club of New Canaan, Inc. ("CCNC"), replies to Omnipoint's Memorandum of Law in Opposition to Defendant's Motion to Stay ("Memorandum"), and moves the Court to stay this action.[1]

Omnipoint's Memorandum confirms that a granting of a stay of these proceedings is appropriate. Specifically, the Memorandum: (1) concedes specific facts which militate in favor of the granting of a stay; and (2) confirms that Omnipoint will suffer no hardship

---

[1] The relief sought in this Reply is in the alternative to the relief sought in CCNC's pending Motion to Dismiss.

during the limited period of the proposed temporary stay. A careful reading of the Memorandum makes it clear that Omnipoint's alleged damages fall into one of two categories: either they are past damages Omnipoint claims it has already sustained; or future damages it may sustain depending on the Siting Council's ruling on Omnipoint's Application. Omnipoint has failed to identify a current hardship it will suffer as a result of the granting of CCNC's Motion for Stay.[2][3]

## I.   Omnipoint Has Conceded Material Facts Concerning The Issue Of Whether A Stay Is Appropriate

Omnipoint's Memorandum concedes several critical facts that are essential to this Court's consideration of whether to grant a stay. By conceding these facts, Omnipoint has made it possible for the Court to grant a stay based upon the record before it. This portion of CCNC's Reply will highlight the conceded facts.

1. The term of the Lease will not commence until Omnipoint commences construction of its proposed facility. This fact is conceded by Omnipoint. *(Memorandum*

---

[2] CCNC has used the same defined terms in this Reply as it used in its Motion to Stay dated October 10, 2003.

[3] CCNC has elected not to respond to Omnipoint's infalmatory discussion of the procedural history of this matter. Suffice it to say that CCNC's lost Appearance has been docketed, its Answer and Special Defenses have been filed, and Omnipoint's discovery request has been fully answered.

*at 2)* (stating, *"[t]he Lease is for a period of 10 years, commencing on the date on which Omnipoint begins construction of its installation ... ."*)

2. The Connecticut Siting Council has exclusive jurisdiction to determine the suitability of a location for the construction of a telecommunications tower such as Omnipoint seeks to erect. *(Memorandum at 8, fn. 5) (recognizing the U.S. Court of Appeals for the Second Circuit decision in <u>Sprint Spectrum v. Connecticut Siting Council</u>, 274 F.3d 674 (2d Cir. 2001)).*

3. The Siting Council is scheduled to hear Omnipoint's Application for regulatory approval at an upcoming hearing on November 10, 2003. *(Memorandum at 10, fn. 6).*

4. CCNC has withdrawn as a party from the Siting Council proceedings relating to Omnipoint's Application for regulatory approval and is no longer opposing the Application. *(Memorandum at 12).*

5. Whether CCNC's appearance in the Siting Council proceedings had any impact on the Siting Council's decision is entirely speculative. *(Memorandum at 10, fn. 6)* (stating that *"[i]t remains to be seen whether Defendant made any impact with its assertion before the Siting Council ... ."*).

3

6. CCNC has provided Omnipoint with repeated access to the Premises to assist Omnipoint in seeking its regulatory approval. *(Memorandum at 3)* (recognizing CCNC *"management providing technical assistance and cooperation to Omnipoint ... ."*).

There is one additional operative fact that has not been made clear. Notably, Omnipoint's Memorandum fails to call to the Court's attention the fact that CCNC's prior appearance in the Siting Council proceedings and its contention that Omnipoint's lease is invalid has been rendered moot in these proceedings as the result of CCNC's withdrawal. The Siting Council previously determined that it would not hear arguments concerning the validity of Omnipoint's lease.[4] Therefore, Omnipoint's argument that CCNC's prior appearance in the Siting Council proceedings has been damaging is misleading. As CCNC has withdrawn from the Siting Council proceedings, and the Siting Council has determined it will continue to hear Omnipoint's Application without consideration of the issues relating to the Lease, Omnipoint's Application will continue to move ahead unimpeded by CCNC.

---

[4] Although the Siting Council did invite CCNC and Omnipoint to submit arguments relating to the validity of the lease in their post-hearing briefs, the fact that CCNC has withdrawn from the proceedings and the fact that a hearing specific to Omnipoint's Application will not occur until November 10, 2003, renders any assertion that CCNC's past actions before the Siting Council will impact its decision invalid, speculative and moot. An excerpt of the Siting Council transcript confirming this fact is attached hereto as <u>Exhibit 1</u>, with the relevant text appearing on page 8, lines 6 through 14.

4

Moreover, Omnipoint's continued focus on the damages it maintains it has suffered as a result of CCNC's past conduct misses the mark. The relevant inquiry is whether CCNC's current conduct is likely to result in hardship to Omnipoint during the period of the Stay. No such hardship is identified in Omnipoint's 13 page Memorandum.

II.    **Omnipoint's Inability To Assert Prejudice Confirms That A Stay Is Appropriate.**

Omnipoint's inconsistent and speculative assertions of damages and hardship confirm that this action is not ripe for adjudication.[5] First, Omnipoint illogically claims future prejudice based on past expeditures it has already made. Second, Omnipoint's assertions of future damages remain contingent upon whether the Siting Council grants or approves its Application, and therefore are completely speculative and certainly not indicative of a hardship if a stay is granted. As a result, Omnipoint has failed to show it will suffer prejudice if the stay is granted.

---

[5] Contrary to Omnipoint's assertion, Magistrate Judge Martinez has not already decided the ripeness issue. Magistrate Judge Martinez ruled only that the Court would not consider a previously-filed Motion for Extension of Time. The Magistrate's ruling was clearly based on the misunderstanding that no appearance by CCNC had been filed with the Court. See Order dated October 8, 2003 (ruling that "[t]*he court shall not consider the instant motion because the defendant has not filed an appearance.*").

A.  **Omnipoint Erroneously Claims A Present Hardship Due To Past Expenditures.**

Omnipoint's assertion of damages and hardship by virtue of its past expenditures is irrelevant to the question of whether Omnipoint will suffer a hardship if a stay of this litigation is ordered. The only issue relevant to the stay is whether Omnipoint will suffer a hardship due to a stay of these proceedings until after the Siting Council has made its decision. Omnipoint's claims of hardship relate to past alleged injuries or are completely contingent on the outcome of the Siting Council proceeding. Further, it is uncontested that Omnipoint's Application to the Siting Council is proceeding unimpeded by CCNC. Omnipoint's damage claims are not responsive to the question of whether Omnipoint will suffer a hardship if the stay is granted.

Omnipoint has confused its past and potential future damage claims with a showing of current hardship. In asserting its potential damages, Omnipoint makes reference to previous efforts and expenditures in seeking Siting Council approval for its proposed Tower. Significantly, Omnipoint identified its economic losses as: *"the considerable time and expense spent in locating this site, negotiating and executing the Lease, and preparing its application for Siting Council approval and shepherding it*

*through [sic] the process."* *(Memorandum at 11).* Notably, all of these events and expenditures have already occurred.[6]

Not one of these claimed expenditures has any bearing on the question of whether Omnipoint will suffer a hardship by virtue of the granting of a stay. Omnipoint has already incurred these expenditures, and a stay will not cause Omnipoint to incur additional similar expenditures. Furthermore, the Siting Council has already determined that it will continue to hear Omnipoint's Application without giving any consideration to the issue of the validity of the Lease. Thus, Omnipoint's previous expenditures have no bearing on whether this Court should grant a stay.[7]

Although Omnipoint additionally asserts that its previous expenditures will be "compounded" if the lawsuit is stayed, one is left to wonder how any *previous* expenditure can be *"compounded." (Memorandum at 11).* Omnipoint's assertion defies logic. The alleged expenditures have been made in the past, and the Siting Council is

---

[6] Among its claimed previous expenditures, Omnipoint states it, *"invested considerable money and resources designing its telecommunications installation to suit the Premises."* The veracity of this statement is questionable, at best. Omnipoint proposes to construct a monopole or flagpole-type facility on the Premises. This facility is identical to the multitude of facilities Omnipoint has already erected and continues to deploy across the State, and the design is certainly not site-specific.

[7] Notably, Omnipoint concedes that CCNC's actions may have damaged Omnipoint only if the Siting Council denies the Application. *(Memorandum at 10)* (conceding that "[*i*]*n the event* the Siting Council renders a decision adverse to Omnipoint, Omnipoint *may* be able to establish that Defendant wrongfully helped bring about such an adverse result....") *(emphasis added).* Omnipoint's concession only serves to highlight the entirely speculative nature of its damage claims.

proceeding with Omnipoint's Application. Therefore, Omnipoint is unable to demonstrate that its previous expenses constitute a future hardship if a stay is granted.

**B.     Omnipoint's Assertions Of Future Damages Are Speculative And Contingent Upon The Siting Council's Decision.**

Just as Omnipoint's assertions of previous expenditures have no bearing on whether a stay should be granted, Omnipoint's speculative assertions of future damages confirm that a stay should be granted. Omnipoint's claims of future damages are wholly contingent on the outcome of the Siting Council proceedings. Omnipoint *"anticipates"* certain economic losses if the present litigation is stayed. *(Memorandum at 11).* Specifically, Omnipoint anticipates being damaged by lost revenue due to delay in putting its Tower on the air, lost or delayed rental income from other carriers which may co-locate on the facility, and damage to its market share caused by an inability to enlist subscribers. *(Memorandum at 11).* Putting aside any arguments as to the validity or speculative nature of these damage claims, all of these claims share a common element: they are contingent upon Omnipoint's Application being approved by the Siting Council. Thus, these *claims* only ripen if Omnipoint obtains Siting Council approval. These damage claims do not exist now, and therefore are not responsive to the question of whether Omnipoint will suffer a hardship due to a stay of this lawsuit. If anything, the

speculative nature of Omnipoint's assertions bolsters the fact that this matter is not yet ripe for adjudication.

Omnipoint has failed to assert a valid hardship in the event a stay is granted. Omnipoint's reliance on past alleged damages and future, speculative damages confirms that this lawsuit is not yet ripe for adjudication. Therefore, CCNC renews its request for a temporary stay of this litigation.

Dated at Darien, Connecticut this 31st day of October, 2003.

```
                    THE DEFENDANT
                    THE COUNTRY CLUB OF NEW CANAAN, INC.

BY:     _____
        MARK R. CARTA (ct-06645)
        With Whom On This Reply Was Christoffel Krediet
        Rucci, Burnham, Carta & Edelberg, LLP
        30 Old Kings Highway South
        Post Office Box 1107
        Darien, Connecticut 06820
        Telephone (203) 899-3300
        Facsimile (203) 655-4302
        Email: mcarta@rbce.com
```

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing Motion to Stay was sent, U.S. mail, postage prepaid, on this 31st day of October, 2003, to the following:

Dennis F. Kerrigan, Jr., Esq.
Brian O'Donnell, Esq.
Jessica A. Ballou, Esq.
LeBoeuf, Lamb, Green & MacRae
Goodwin Square - 225 Asylum Street
Hartford, Connecticut 06103

_____
MARK R. CARTA (ct-06645)