UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMNIPOINT COMMUNICATIONS INC, and OMNIPOINT FACILITIES NETWORK 2, L.L.C.<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>THE COUNTRY CLUB OF NEW CANAAN, INC.<br><br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    Civil Action No.:<br>              303CV0900AWT<br><br><br><br><br><br><br><br>   November 12, 2003 |

FILED
2003 NOV 12 P 2:18
DISTRICT COURT
HARTFORD CT

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

　　Plaintiffs Omnipoint Communications, Inc., and Omnipoint Facilities Network 2, L.L.C. (collectively, "Omnipoint"), hereby file this Memorandum of Law in Opposition to Defendant's Motion to Dismiss dated October 22, 2003. Defendant's principal argument, claiming lack of ripeness, has no merit because it is based on an incorrect interpretation of the contract between the parties, and disregards the fact that Omnipoint has already been damaged by Defendant's conduct irrespective of action by the Connecticut Siting Council.

　　Defendant's secondary argument is even more troubling than its principal argument, because it is based on an unsigned letter, purporting to be from a state regulator who has in fact denied writing the letter. Notably, Defendant's counsel was informed that the letter was a fabrication many weeks ago, but nevertheless presented the letter to the Court as genuine. These arguments are explained below in detail.

**ORAL ARGUMENT REQUESTED**

I. **BACKGROUND**

Omnipoint commenced this action by Complaint filed on May 21, 2003, seeking to enforce a contract permitting Omnipoint to locate a wireless telecommunications tower facility on Defendant's property (the "Lease") (copy attached as Exhibit 1), and also seeking money damages arising from Defendant's active opposition to Omnipoint before the Connecticut Siting Council ("Siting Council"), despite Defendant's promise in the Lease to "cooperate" in obtaining Siting Council approval.

Defendant filed its Answer on October 3, 2003, and on October 10, 2003, Defendant filed a Motion to Stay claiming that Omnipoint's claims were not ripe. A mere twelve days later, Defendant filed a largely identical Motion to Dismiss ("Motion"). Thus, many -- although not all -- of the arguments presented here are similar to Omnipoint's arguments in opposition to Defendant's Motion to Stay. Omnipoint has no alternative but to fully oppose both duplicative motions.[1]

A. **Omnipoint's Lease.**

Pursuant to the Lease, Omnipoint is permitted to erect on a defined area of the Defendant's property (the "Premises") a 110-foot-tall monopole, as well as unmanned equipment on the ground, including an electrical cabinet, which would be shielded from view by a fence and shrubbery. The Lease is for a period of 10 years, commencing on the date on which Omnipoint begins construction of its installation, and grants to Omnipoint the right to renew the Lease for three successive five-year periods after the expiration of the initial 10-year term. The Lease

---

[1] In Omnipoint's view, Defendant has "encroach[ed] on the Court's limited time and resources, . . . which can only be calculated to disrupt the orderly consideration of cases" by restating claims that have already been made. Hart v. United States, No. 94-1604, 1994 U.S. App. LEXIS 36785, at *2 (1st Cir. 1994) (affirming district court ruling enjoining party from filing duplicative motions) (copies of unpublished cases are attached hereto at Exhibit 2); see also Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F. 3d 424, 431 (7th Cir. 1997) (affirming trial court decision granting sanctions for duplicative motion practice).

2

specifies a particular amount of monthly rent, in dollars, with rental payments commencing within 10 business days after the commencement of construction of Omnipoint's installation.

The Lease obligates Defendant to "cooperate with Lessee, at Lessee's expense, in making application for and obtaining any local, state, federal licenses, permits and any other approvals which may be required to allow lessee use of the Premises." Lease at ¶ 2(b). Also, pursuant to Paragraph 2(d) of the Lease, Defendant agreed to "provide twenty-four (24) hours, seven (7) days a week access to the Premises . . . to Lessee, Lessee's employees or any subcontractors or agents."

### B.    Defendant Initially Cooperated After the Lease Was Executed.

For approximately 29 months after the execution of the Lease by its treasurer, James N. Barton, on September 20, 2000, Defendant, through its club management, led Omnipoint to believe that Defendant would honor its obligations under the Lease. See Complaint at 5. During 2001, Omnipoint sought local zoning approval for the facilities proposed for the Premises and club management provided technical assistance and cooperation to Omnipoint, including allowing engineering professionals to access the Premises and other portions of the Defendant's property to conduct various tests and inspections, including the temporary erection by crane of antennas used to simulate telecommunications signals from the proposed facilities. See Complaint at 5. During 2002, after regulatory authority for such new tower facilities shifted to the Siting Council, Omnipoint returned to the Defendant's property in search of alternative site locations to provide more than one option for regulatory consideration, and club management -- including General Manager John Lippke and Board Member Bill Hine -- provided access to the

property and attended various site inspections, facilitated by the use of Defendant's golf carts.[2] See Complaint at 5.

After the execution of the Lease by Barton, and during the time that Defendant led Omnipoint to believe it would honor its obligations under the Lease, Omnipoint invested considerable money and resources designing its telecommunications installation to suit the Premises and pursuing regulatory approval of the telecommunications installation at the Premises from, among others, the Siting Council and the New Canaan Planning & Zoning Commission. See Complaint at 6.

More than two years had passed since the execution of the Lease when, in March 2003, Defendant, through its legal representative, informed Omnipoint for the first time that it had determined the Lease was "invalid and of no force and effect." Letter, Joseph J. Rucci, Jr. ("Rucci") to Stephen J. Humes ("Humes"), dated March 20, 2003, copy attached hereto as Exhibit 3. See also Complaint at 6.

Defendant's counsel further wrote to Omnipoint's counsel on April 21, 2003, (with a "cc" to the Siting Council), to state that: "Your client is further advised not to attempt to enter upon any part of CCNC property. Any unauthorized entry upon the property will be considered a trespass." Letter, Rucci to Humes, April 21, 2003, copy attached hereto as Exhibit 4 (emphasis added). See Affidavit of Attorney Stephen J. Humes, attached hereto as Exhibit 5 and authenticating Exhibits 3 and 4.

At that time, Defendant also sought dismissal and denial of Omnipoint's Siting Council Application, thereby affirmatively breaching its duty to cooperate with Omnipoint in obtaining Siting Council approval. See Defendant's Notice of Intent to Be Party and Petition for Party

---

[2] Defendant's board member, "Bill Hine," was so identified in Omnipoint's complaint on information and belief. Omnipoint has not yet determined whether this board member is the same person as William Heyn, who submitted an affidavit in support of Defendant's Motion.

4

Status, dated April 30, 2003, at 2 ("there is no valid lease between CCNC and Omnipoint") (copy attached as Exhibit 6). Against that background, Defendant now advances the unavailing argument that Omnipoint's claims are not ripe.

## II.    ARGUMENT

### A.    Standard for Motion to Dismiss.

"When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the allegations of the complaint are construed in the plaintiff's favor." LaFrancis v. United States, 66 F. Supp. 2d 335, 337 (D. Conn. 1999).[3] "[T]he court must accept all well pleaded factual allegations as true and must draw reasonable inferences in favor of the plaintiff." MM Global Servs. Inc. v. The Dow Chem. Co., No. 3:02cv1107, 2003 U.S. Dist. LEXIS 16643, at *16 (D. Conn. Sept. 12, 2003).

In determining whether an action is "ripe" for judicial review, a court must consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977). "In assessing the possible hardship to the parties resulting from withholding judicial resolution, we ask whether the challenged action creates a direct and immediate dilemma for the parties." Simmonds v. Immigration and Naturalization Serv., 326 F.3d 351, 360 (2d Cir. 2003). "[T]he fitness analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." Id. at 359 (internal quotation marks omitted).

---

[3] Where a motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure claims lack of jurisdiction, the court may consider "affidavits, deposition testimony, and other materials outside the complaint." Ensign-Bickford Co. v. ICI Explosives USA Inc., 817 F. Supp. 1018, 1023 (D. Conn. 1993) (denying motion to dismiss where plaintiff demonstrated subject matter jurisdiction). See also United States v. Phipps, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) ("the Court, in deciding a Rule 12(b)(1) motion, may consider materials outside the pleadings, such as affidavits and documents"); Gentile v. Town of Huntington, No. CV-03-0636, 2003 U.S. Dist. LEXIS 18870, at *6 (E.D.N.Y. Oct. 22, 2003) ("[T]he court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." (internal quotation marks omitted)).

**B.      Defendant's Ripeness Argument Is Without Merit.**

Long-established case law has rejected the illogical contract interpretation upon which Defendant bases its ripeness argument. Defendant argues that its breach of its existing contractual obligation to cooperate before the Siting Council can be overlooked because Omnipoint has not yet begun to occupy Defendant's property. In Defendant's view: the "term of the purported lease only begins upon Omnipoint's commencement of construction of the Tower"; Omnipoint cannot commence construction of the tower until it obtains approval of the Siting Council; and therefore Omnipoint should be barred from litigating Defendant's repudiation of the Lease until after the Siting Council rules on Omnipoint's application. See Defendant's Motion to Dismiss, at 2-3. That sort of nonsensical contract interpretation has been rejected by this Court and others.

To argue, as Defendant does, "that a contract is unenforceable because there remains at any given time, certain obligations characterized as 'conditions precedent,' the failure of which renders a contract unenforceable, would be tantamount to saying that the contract would never be enforceable." KMart Corp. v. First Hartford Realty Corp., 810 F. Supp. 1316, 1325 (D. Conn. 1993). In KMart Corp., similar to the case at bar, this Court upheld, as valid and enforceable, a lease for store premises that was executed in November 1990 and scheduled to commence in the future, upon completion and delivery of the building and approval of certain drawings. Id. at 1320. This Court rejected the contention that the instrument never ripened into a contract. Id. at 1324. See also Johnson v. Phoenix Mut. Life Ins. Co., 46 Conn. 92, 102 (1878) (present lease commencing in the future is a valid lease). This Court should also reject Defendant's suggestion that its lease with Omnipoint never ripened into a contract because Omnipoint has not commenced construction or obtained Siting Council approval. Defendant has not cited one case to support this argument and the Court should deny its Motion as a result.

6

1.  **This Court Has Already Decided that Defendant's Ripeness Argument Lacks Merit.**

By order dated October 8, 2003, Magistrate Judge Martinez rejected Defendant's assertion that the issues in the present case are not ripe. In denying Defendant's Motion for Extension of Time, Magistrate Judge Martinez wrote, "[t]he defendant's argument that it should not respond until the Siting Council renders its decision, which might not be until next year, does not constitute good cause." Defendant offers no justification for why Magistrate Judge Martinez's decision should be overruled. Omnipoint believes that Magistrate Judge Martinez's decision was sound and should not be ignored.[4]

2.  **Defendant's Argument Is Not Supported by the Lease.**

Defendant misconstrues Lease language, arguing that the Lease does not even go into effect until Omnipoint begins construction, even though the Lease imposed on Defendant <u>clear pre-construction obligations that currently exist</u>, and Defendant ignores the fact that its breach has already caused damage to Omnipoint. Defendant disregards Section 2(b) of the Lease: "Lessor agrees to cooperate with Lessee . . . in making application for and obtaining any local, state, federal licenses, permits and any other approvals which may be required to allow Lessee use of the Premises."  Defendant's argument -- that the Lease has not yet gone into effect even though it describes an existing obligation -- is nonsensical.[5]

---

[4] Defendant dismisses Magistrate Judge Martinez's order in its reply brief in support of its Motion to Stay, stating that "[t]he magistrate's ruling was clearly based on the misunderstanding that no appearance by CCNC had been filed with the Court." Reply to Omnipoint's Memorandum of Law in Opposition to Defendant's Motion to Stay at 5 n.5. That does not change the fact that Defendant, in a "Motion for Extension of Time," sought to put off its response to this lawsuit until after the Siting Council ruled, and the Magistrate squarely addressed -- and denied -- that request as quoted above. Having been denied once (by the Magistrate on October 8, 2003), Defendant now renews the same request, first as a Motion to Stay, and then as a Motion to Dismiss. Both motions should be denied and Defendant should not be afforded the opportunity to ask over and over again for the same relief.

[5] As discussed below, Defendant attempted to undermine Omnipoint's application to the Siting Council by intervening as a party in that proceeding and actively opposing Omnipoint -- <u>exactly the opposite of what Defendant was required to do under the Lease</u>. In fact, Defendant even urged the Siting Council to deny Omnipoint's application, asserting lack of jurisdiction due to the alleged invalidity of the Lease.

7

Defendant also twists the Lease language. The Lease permits Omnipoint to use Defendant's property for a ten-year period that commences when Omnipoint begins construction at the Premises -- as opposed to a ten-year period that starts with the signing of the Lease. See Lease, § 5 (emphasis added), and § 6 (Exhibit 1). This ten-year period is the "term" of the Lease. Defendant twists this language to argue that the contract does not even go into effect until Omnipoint starts construction. See Motion to Dismiss, at 3 ("commencement of the lease [is] contingent on the commencement of Omnipoint's construction . . . ." (emphasis added)). This interpretation is unsupported by the Lease terms, including the pre-construction obligations described above.

### 3. Defendant's Argument Is Internally Inconsistent.

The Lease anticipates that Omnipoint would undertake to obtain regulatory approval to erect a tower <u>on the property specified in the Lease</u>. With the executed Lease in hand, Omnipoint prepared its site plans and other technical materials and approached first the Town of New Canaan and then the Siting Council for regulatory approval of its proposal to construct a telecommunications tower facility <u>on the leased premises</u>.[6] More than two years after Omnipoint had incurred substantial expenses in pursuing applicable governmental approvals for the proposed facility, including the expense of completing and filing its certificate application to the Siting Council, Defendant attempted to pull the rug out from under Omnipoint by flatly asserting to the Siting Council that the Lease was invalid (thereby <u>affirmatively trying to undermine Omnipoint's application to the Siting Council</u> after having promised in the Lease agreement to cooperate to obtain approval). See Letter, Joseph J. Rucci, Jr. to Stephen J. Humes, dated

---

[6] While Omnipoint was pursuing local zoning approval, a process that resulted in protracted delays while the town sought to adopt its own telecommunications regulations, the U.S. Circuit Court of Appeals for the Second Circuit issued a decision that found jurisdiction for siting approval of such telecommunication facilities vested exclusively with the Siting Council instead of municipal land use agencies in Connecticut. See Sprint Spectrum v. Connecticut Siting Council, 274 F.3d 674 (2d Cir. 2001). As a result of that decision, Omnipoint pursued regulatory approval for the proposed telecommunications facility at the Siting Council.

8

March 20, 2003, "the Lease Agreement is invalid and of no force and effect") (copy attached as Exhibit 3); Defendant's Notice of Intent to Be Party and Petition for Party Status, dated April 30, 2003, at 2 ("there is no valid lease between CCNC and Omnipoint") (copy attached as Exhibit 6).[7]

Against that background, Defendant now advances the unavailing argument that Omnipoint's ability to enforce its Lease rights must wait, but Omnipoint must continue trying to obtain Siting Council approval to operate a tower on a site where, according to Defendant, Omnipoint has no right to construct a tower.  Contrary to Defendant's suggestions, the Lease and the Siting Council application are <u>interdependent</u> -- Omnipoint relied on the existence of the Lease in deciding to incur the expense of obtaining Siting Council approval for use of <u>the leased premises</u>.  Defendant's repudiation of the Lease is a direct and immediate dilemma for Omnipoint because Omnipoint continues to incur expenses in pursuing administrative proceedings at the Siting Council, even while Defendant denies that Omnipoint has a right to use the site for which Omnipoint is attempting to obtain Siting Council approval.[8]

### 4.   Defendant Relies on a <u>Disavowed</u> Letter Misstating State Policy.

Defendant misleads the Court by citing a discredited letter purporting to describe state policy, even after Defendant's counsel was put on notice (in a related case) that the letter had been

---

[7] Defendant has since withdrawn its Siting Council opposition, but it cannot unring the bell.  Defendant now claims to have sent a letter to the Siting Council by facsimile on Monday, November 10, 2003 -- while the Siting Council's final hearing on Docket 244 was in progress -- in which Defendant confirmed its withdrawal as a party and further stated that it "supports Omnipoint's application being heard on the merits."  A copy of the letter is attached as Exhibit 7, and is authenticated by the Affidavit of Humes.  This letter is hardly a sign that Defendant is meeting its contractual obligation to cooperate in obtaining Siting Council approval.  In fact, Defendant still does not even take the minimal step of stating that it supports the approval of Omnipoint's application by the Siting Council.  After Defendant's active opposition, and its assertion that Omnipoint's application should be denied because the Lease was invalid, Defendant's cryptic letter to the Siting Council does not begin to undo the harm of Defendant's contractual breach.

[8] During the administrative hearing on November 10, 2003 in Docket No. 244, the Siting Council expressed its frustration in being forced to decide the administrative case without knowing the outcome of the litigation.  (The relevant portions of the transcript from this hearing will be made available to the Court once Omnipoint receives the transcript.)

9

disavowed and did not accurately describe state policy. Defendant attached an affidavit from one of Defendant's board members, William Heyn ("Heyn"), who claims personal knowledge about the purported DOT letter. See Affidavit of Heyn, at ¶ 2 (claiming personal knowledge) and ¶ 17 ("On October 7, 2003, the Connecticut Department of Transportation sent a notice to the Siting Council ("Notice") indicating that the DOT's Office of Maintenance must review the location of all future telecommunications towers. A copy of the Notice is attached as Exhibit 2.").

In fact, its purported author has disavowed the letter, which is unsigned, and Defendant cites no other source for the alleged DOT policy. See Exhibit 8 (in which the purported author, Charles A. Drda ("Drda"), stated in writing that the letter "was NOT sent out from my office and was sent without my knowledge").[9] See also Affidavit of Attorney Stephen J. Humes, attached at Exhibit 5 and authenticating Exhibit 8.

Defendant's counsel was informed by Omnipoint, well before the filing of Defendant's brief, that the letter was inaccurate and of suspect provenance. Omnipoint so informed counsel in the context of a similar proceeding before the Siting Council in which Defendant's counsel represents a different party. There, Omnipoint filed an Objection to Supplemental Exhibit and Response to Applicant's Late-File Exhibits dated October 15, 2003 ("Omnipoint's Objection") (attached hereto as Exhibit 9), which was served on, among others, Rucci, Burnham, Carta & Edelberg, LLP ("Rucci, Burnham"). Rucci, Burnham was not a casual recipient of Omnipoint's Objection -- in fact, Omnipoint was objecting to the introduction of the bogus DOT letter at the Siting Council <u>by Rucci, Burnham</u> on behalf of its client, one Marie Louise Brown. See Supplemental Exhibit and Response to Applicant's Late-File Exhibits, attached hereto as Exhibit 10. As Omnipoint's Objection made

---

[9] Drda also testified at the Siting Council hearing in Docket No. 244 on November 10, 2003 and confirmed under oath that the letter was sent without his knowledge or consent and should be disregarded entirely. (The relevant portions of the transcript from this hearing will be made available to the Court once Omnipoint receives the transcript.)

10

clear, "the alleged author has completely disavowed the document and indicated it was sent without his knowledge or consent. The DOT is in the process of correcting the record . . . to remove the Document from consideration." Omnipoint Objection, at 3.[10]

In short, Defendant attempts to distract and mislead the Court with a bogus letter, purportedly representing DOT policy, suggesting a reason to believe that Omnipoint's application to the Siting Council will not be approved. Notwithstanding Defendant's board member Heyn's sworn testimony by affidavit, the letter is inaccurate and should be disregarded,[11] and the Court need not attempt to predict the outcome of the Siting Council approval process.

### 5.    Omnipoint's Lawsuit Does Not Hinge on Siting Council Action.

Defendant is wrong to suggest that Omnipoint's lawsuit would become moot were the Siting Council to deny Omnipoint's application. See Defendant's Motion to Dismiss, at 12. In addition to specific enforcement of the Lease, and Defendant's immediate contractual obligation to cooperate in the effort to obtain regulatory approval, Omnipoint also seeks money damages.

The Court need not attempt to predict the outcome of the Siting Council review. Omnipoint has asked the Court to determine the validity of its Lease with Defendant and this case presents two possible outcomes: either the Lease is valid, in which case Omnipoint is entitled to enforce the

---

[10] Omnipoint seeks Siting Council approval to operate towers at two sites in New Canaan. The tower at issue in this litigation is also the subject of a Siting Council proceeding identified as Docket No. 244. A separate Siting Council proceeding, identified as Docket No. 243, addresses an Omnipoint application to operate a tower at another site in New Canaan. Rucci, Burnham represents Defendant in this litigation and represented Defendant in Docket No. 244 before it withdrew as a participant. It also represented one Marie Louise Brown in Docket No. 243. The same attorney, Robert Maslan, worked on all three matters for Rucci, Burnham.
    On October 7, 2003, the Siting Council in Docket No. 244 sent all parties and intervenors (including Rucci, Burnham, on behalf of the Defendant here) a copy of the bogus DOT letter. See facsimile attached hereto as Exhibit 11. Rucci, Burnham, on behalf of Marie Louise Brown, then attempted to supplement the administrative record in Docket No. 243 with the bogus DOT letter. As noted above, Omnipoint served Rucci, Burnham, a copy of its Objection noting that the purported DOT letter had been discredited. Now, Rucci, Burnham presents the letter to the Court without noting its suspect origin.

[11] After Defendant's submission to this Court of the disavowed letter, the Siting Council received a document purporting to be a revised statement of a DOT "guideline" with respect to telecommunications towers. Drda testified on November 10, 2003 in Docket No. 244 before the Siting Council that this "guideline" document is also a disavowed letter, sent without his knowledge or consent, and also should be disregarded. (The relevant portions of the transcript from this hearing can be made available to the Court once Omnipoint receives the transcript.)

11

Lease following Defendant's actual breach and stated intention to continue to breach; or the Lease is invalid for the reasons Defendant claims, in which case Defendant, by its agent, misled Omnipoint about the validity of the Lease and caused Omnipoint to incur damages pursing a flawed application before the Siting Council. Omnipoint is harmed in either case, and entitled to pursue its remedies through this action.

### 6. Omnipoint Faces Immediate Hardship if this Action Is Dismissed.

Given that Defendant has flatly stated its intention not to honor the Lease, Omnipoint should not have to <u>begin</u> litigating its Lease rights in mid-2004, following Siting Council approval. Rather, Omnipoint had a right to begin that litigation in May when Defendant caused Omnipoint damage by materially breaching the Lease. Omnipoint now seeks that the litigation be well advanced, if not resolved, once Siting Council approval is obtained.

Omnipoint will continue to incur substantial economic losses if the Court dismisses this case. Contrary to Defendant's allegation that "any claims of damages by Omnipoint are remote and speculative," Omnipoint can quantify the considerable time and expense spent in locating this site, negotiating and executing the Lease, and preparing its application for Siting Council approval and shepherding it though the process. See Defendant's Motion to Dismiss, at 12. Other real losses include: (i) the compounding impacts of lost revenue from the delay in getting the revenue-producing facility on air; (ii) lost/delayed rental income from another carrier which has proposed to sublease space on the facility; and (iii) local damage to Omnipoint's market share through Omnipoint's inability to enlist subscribers to its telecommunications service due to unreliable signal quality in the local New Canaan area. Omnipoint anticipates that its damages here exceed $1 million.

Defendant asserts that "Omnipoint would suffer no immediate hardship if this Court were to decline to render an advisory opinion on the parties' rights if and when the Lease commences," and asserts as a reason that "Omnipoint's Application to the Siting Council is moving forward unimpeded by CCNC." See Defendant's Motion to Dismiss, at 11. This statement ignores the fact that Defendant has already notified the Siting Council of its belief that the Lease is invalid, moved to become a party to the proceedings in active opposition to Omnipoint (only recently withdrawing as a party) and has breached its currently existing obligations under the Lease to "cooperate" with Omnipoint in seeking regulatory approval. There is therefore a direct and immediate dilemma that requires court intervention.

Defendant does not face any hardships in going forward with its defense. Its only stated hardship is the legal fees it has had to expend to defend this suit, which is true of every defendant that breaches a contract and is sued. See Defendant's Motion to Dismiss, at 13. Defendant holds the mistaken view that this case will immediately end if the Siting Council denies Omnipoint's application. However, as stated above, Omnipoint will litigate to resolution the effects that Defendant's failure to cooperate at the Siting Council -- and, instead, active opposition -- had on Omnipoint's application.

Given the substantial hardships a dismissal would have on Omnipoint, a weighing of the parties' interests favors the denial of a dismissal on ripeness grounds.

## III.    CONCLUSION

For the reasons stated above, Omnipoint respectfully requests that the Court deny Defendant's Motion to Dismiss.

>                    PLAINTIFFS,
>                    OMNIPOINT COMMUNICATIONS, INC. and
>                    OMNIPOINT FACILITIES NETWORK 2, L.L.C.
>
>                    By: _____
>                    Dennis F. Kerrigan, Jr. (ct09621)
>                    Stephen J. Humes (ct14065)
>                    Brian O'Donnell (ct16041)
>                    LeBoeuf, Lamb, Greene & MacRae, L.L.P.
>                    Goodwin Square
>                    225 Asylum Street
>                    Hartford, CT 06103
>                    Telephone: (860) 293-3500
>                    Facsimile: (860) 293-3555

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 12th day of November, 2003, to the following counsel of record:

Mark R. Carta
Rucci, Burnham, Carta & Edelberg, L.L.P.
30 Old King's Highway South
P.O. Box 1107
Darien, CT 06820

Brian O'Donnell