1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OMNIPOINT COMMUNICATIONS INC,  :
and OMNIPOINT FACILITIES       :
NETWORK 2, L.L.C.              :
                Plaintiffs,  :    Civil Action No.:
                           :    303CV0900AWT
vs.                            :
                           :
THE COUNTRY CLUB OF            :
NEW CANAAN, INC                :
                           :
                           :
             Defendant.  :    December 2, 2003

## *AFFIDAVIT OF BRIAN O'DONNELL*

I, Brian O'Donnell, having been duly sworn, hereby depose and state:

1.      I am over the age of eighteen, understand and believe in the obligations of an oath, and make the following statements based upon personal knowledge;

2.      I am associated with the law firm of LeBoeuf, Lamb, Greene and MacRae, L.L.P. ("LeBoeuf") located at Goodwin Square, 225 Asylum Street, Hartford, Connecticut 06103, and represent Plaintiffs Omnipoint Communications, Inc., and Omnipoint Facilities Network 2, L.L.C., in the above-captioned matter;

3.      The document attached as Exhibit A is an excerpt of the transcript of a proceeding before the Connecticut Siting Council regarding an application of Plaintiffs to operate a telecommunications tower on property owned by Defendant, and the excerpt contains the testimony of Charles A. Drda of the Connecticut Department of Transportation;

4.    Further affiant sayeth naught.

Brian O'Donnell

State of Connecticut            )
                                )    ss:  Hartford, Connecticut
County of Hartford              )


Subscribed to and sworn to before me on this 2nd day of December, 2003

Notary Public
My Commission Expires: 6/30/07


**MARY K. LARSON**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2007

2

A

1

STATE OF CONNECTICUT

SITING COUNCIL

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                                   *
OMNIPOINT FACILITIES                               *
NETWORK 2, LLC (A SUBSIDIARY OF                    *  NOVEMBER 10, 2003
T-MOBILE USA, INC.                                 *  (11:05 AM
                                                   *
APPLICATION FOR A CERTIFICATE OF                   *
ENVIRONMENTAL COMPATIBILITY AND                    *
PUBLIC NEED FOR THE CONSTRUCTION,                  *  DOCKET NO. 244
MAINTENANCE AND OPERATION OF A                     *
WIRELESS TELECOMMUNICATIONS                        *
FACILITY AT THE NEW CANAAN COUNTRY                 *
CLUB, 95 COUNTRY CLUB ROAD,                        *
NEW CANAAN, CONNECTICUT                            *
                                                   *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

BEFORE:  PAMELA B. KATZ, CHAIRMAN

BOARD MEMBERS:  Colin C. Tait, Vice Chaiman
                Brian Emerick, DEP Designee
                Gerald J. Heffernan, DPUC Designee
                Daniel P. Lynch, Jr.
                Edward S. Wilensky
                Philip T. Ashton
                Brian O'Neill

STAFF MEMBERS:  S. Derek Phelps, Executive Director
                Christina Lepage, Siting Analyst
                Robert L. Marconi, AAG

APPEARANCES:

        FOR THE APPLICANT, OMNIPOINT FACILITIES
        NETWORK 2, LLC (A subsidiary of T-Mobile USA,
        Inc.:

            LeBOEUF, LAMB, GREENE & MacRAE, LLP
            Goodwin Square
            225 Asylum Street
            Hartford, Connecticut  06103
                BY:  STEPHEN J. HUMES, ESQUIRE

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

2

FOR THE INTERVENOR, AT&T WIRELESS, PCS,
d/b/a AT&T WIRELESS:

    CUDDY & FEDER, LLP
    90 Maple Avenue
    White Plains, New York  10601-5196
        BY:  CHRISTOPHER B. FISHER, ESQUIRE


FOR THE PARTY, CITIZENS FOR RESPONSIBLE CELLULAR
PLANNING:

    DIANE BALDWIN
    22 Wardwell Drive
    New Canaan, Connecticut  06840


FOR THE PARTY, THE TOWN OF NEW CANAAN:

    CUMMINGS & LOCKWOOD, LLC
    Four Stamford Plaza
    107 Elm Street
    Stamford, Connecticut  06902
        BY:  JOHN W. CANNAVINO, ESQUIRE
           M. JULIE BONAZZOLI, ATTORNEY


FOR THE PARTY, JOHN CORCORAN, WANDA CORCORAN,
JAMES LINEBERGER AND HARRIETJO LINEBERGER:

    ALAN R. SPIRER, ESQUIRE
    830 Post Road East
    P.O. Box 5201
    Westport, Connecticut  06880


FOR THE PARTY, LEWIS D. BAKES:

    LEWIS D. BAKES (Pro Se)
    561 Smith Ridge Road
    New Canaan, Connecticut  06840


FOR THE PARTY, THOMAS A. CHAMPION:

    THOMAS A. CHAMPION (Pro Se)
    589 Smith Ridge Road
    New Canaan, Connecticut  06840

3

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1               . . .Verbatim proceedings of a hearing

2       before the State of Connecticut Siting Council in the

3       matter of an application by Omnipoint Facilities Network

4       2, LLC, a subsidiary of T-Mobile USA, Inc., held at the

5       offices of the Connecticut Siting Council, Ten Franklin

6       Square, New Britain, Connecticut, on November 10, 2003 at

7       11:05 a.m., at which time the parties were represented as

8       hereinbefore set forth . . .

9

10

11              CHAIRMAN PAMELA B. KATZ:  Ladies and

12      gentlemen, this hearing is called to order Monday,

13      November 10, 2003 at 10:00 a.m.

14              My name is Pamela B. Katz, Chairman of the

15      Connecticut Siting Council.  Other members of the Council

16      here are Brian Emerick, designee for Commissioner Rocque

17      of DEP; Gerald J. Heffernan, designee for Commissioner

18      Downes of DPUC; Philip T. Ashton; Daniel P. Lynch, Jr.;

19      Brian O'Neill; Edward S. Wilensky; and Vice Chairman

20      Colin Tait.

21              Members of the staff are S. Derek Phelps,

22      Executive Director; Robert L. Marconi, Assistant Attorney

23      General; and Christina Lepage, Siting Analyst.  The court

24      reporter is Chamagne LaRock.

182

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    center --

2                    MS. CORCORAN:  Um-hmm.

3                    MR. ASHTON:  -- and there were two large

4    objects to the either left or right, which I'm inclined

5    to believe are large Maple Trees --

6                    MS. CORCORAN:  Um-hmm.

7                    MR. ASHTON:  -- are you concerned about

8    the fall zone of those Maple Trees too?

9                    MS. CORCORAN:  Well, they're Ash Trees

10   actually on my property.  Am I concerned about them?  Not

11   enough to take them out, no.

12                    MR. ASHTON:  Thank you.  Nothing further.

13                    CHAIRMAN KATZ:  Any other questions of

14   this witness from any Council member?  Mr. O'Neill.

15                    MR. O'NEILL:  Mrs. Corcoran, I'm curious,

16   do you own a cell phone?

17                    MS. CORCORAN:  Yes, I do.

18                    MR. O'NEILL:  May I ask what carrier you

19   have?

20                    MS. CORCORAN:  We use AT&T Wireless.

21                    MR. O'NEILL:  Do you have good coverage at

22   your home, in your driveway?

23                    MS. CORCORAN:  We have coverage in the

24   driveway.  If we try and use it in the house, it can be

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

183

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    erratic, you have to stand still.  I usually don't use my

2    cell phone in the house, so.

3                    MR. O'NEILL:  Have you noticed any loss of

4    coverage along 123?

5                    MS. CORCORAN:  There are at times where it

6    can be spotty at different areas of 123.  I've never been

7    dropped, I guess is the phrase.  It can be static'y.  I

8    would not call myself a heavy cell phone user though, so

9    I'm not sure.

10                    MR. O'NEILL:  Thank you.

11                    CHAIRMAN KATZ:  Any other questions of

12    this witness?  Thank you very much --

13                    MS. CORCORAN:  Thank you.

14                    CHAIRMAN KATZ:  -- you're excused.  I

15    understand DOT has arrived.  We're going to take a short

16    break --

17                    MR. PHELPS:  They're in the house.

18                    CHAIRMAN KATZ:  They're in the house.

19    We're going to take a short break.  We'll take our 3:30

20    break now and allow time for DOT to come in and for his

21    witness to consult his Assistant AG.  And so let's resume

22    at 3:20.

23                    (Whereupon, a short recess was taken.)

24                    CHAIRMAN KATZ:  Just to summarize where we

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

184

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    are in the proceeding, DOT has graciously allowed a

2    witness to come forward to clarify that and we're going

3    to do that first.  I have to step out at 3:30 for another

4    matter, so the Vice Chairman will take over at that

5    point. Then after we conclude with DOT, next on the

6    agenda is the Town's case.  Any questions on that?

7            MR. SPIRER:  I have one exhibit I'd like

8    to put in for administrative notice.  I'll take it up

9    when we're done with DOT.

10            CHAIRMAN KATZ:  Okay.  I appreciate that.

11            MR. MARCONI:  Okay --

12            CHAIRMAN KATZ:  Okay, first we'll ask the

13    witness to identify himself and then Mr. Marconi will

14    swear him in.

15            MR. MARCONI:  Yeah.  Mr. Drda, if you

16    could please state your full name, spell your last name

17    for the court reporter, and just give your address.

18            MR. CHARLES DRDA:  My name is Charles

19    Drda, D-r-d-a.  I live at 10 Quail Run, Harwington,

20    Connecticut.

21            MR. MARCONI:  Okay --

22            CHAIRMAN KATZ:  If you could just give

23    your title and affiliation.

24            MR. DRDA:  I'm currently employed by the

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

185

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    Connecticut Department of Transportation.  I'm the Acting

2    Director of Maintenance.

3                    MR. MARCONI:  Okay.  And if you could

4    please stand and please raise your right hand.

5                    (Whereupon, Charles Drda was duly sworn

6    in.)

7                    MR. MARCONI:  Please be seated.

8                    CHAIRMAN KATZ:  Okay.  Did you want to

9    make an opening remark before we have cross-examination?

10                   MR. DRDA:  Well first I'd like to open

11   about the -- there's some correspondence that was sent

12   out concerning this docket and I just wanted to clarify

13   that. The Department of Transportation conducts reviews,

14   as we all know, on Siting Council issues.  And we

15   submitted some of our comments previously to the Office

16   of Environmental Planning.  An employee without my

17   knowledge took those comments and applied them to this

18   particular docket.  And it's my understanding that the

19   issue had to deal with allowing access to the DOT highway

20   system.  And what it boils down to is that the comment

21   that was transcribed from one review process to the other

22   was -- the initial application was for a non-access

23   highway.  And the comments that were made by the Office

24   of Environmental Planning submitted to the Siting Council

186

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    was for limited access -- or a highway that provided

2    breaks in the access or a secondary roadway.  And you

3    know, I just wanted to state that those comments-- even

4    though my name was on the memo that went out, I did not

5    review those comments or take part in those comments

6    prior to them being submitted to the Siting Council.

7                    MR. MARCONI:  Uh --

8                    CHAIRMAN KATZ:  Yes.

9                    MR. MARCONI:  I wanted to show you a set

10   of comments that -- they don't appear to be originally

11   dated, but we have them stamped as received October 16,

12   2003 from the Connecticut Siting Council.  With

13   permission of Madam Chairman, I'd like to just approach.

14                   CHAIRMAN KATZ:  Yes.

15                   MR. MARCONI:  Okay.  Okay, Mr. Phelps has

16   a copy of what I'm showing.  And I'll show this actually

17   to counsel unless counsel has already seen it-- okay --

18   so all legal counsel here already know which comments I'm

19   talking about?

20                   MR. SPIRER:  This is the one stamped

21   October 16?

22                   MR. MARCONI:  October 16th, yes.  And I

23   just wanted to walk you through some parts of this just

24   to make sure we have it clarified.

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

187

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1           MR. DRDA:  Yes.

2           MR. MARCONI:  I'll take the last sentence

3    first, it's easiest to cover, where it says, quote, "No

4    access to any towers will be permitted from the State

5    highway system along limited access highways".  So let me

6    make sure I have this clear, is -- we are talking about

7    things such as the Merritt Parkway which has limited

8    exits and entrances?

9           MR. DRDA:  Yeah.  Any of our expressway

10   highways --

11          MR. MARCONI:  Right.

12          MR. DRDA:  -- connector roadways,

13   collector roadways, they have non-access lines which we

14   do not permit breaks in, and that's for interstate

15   routes, I-84, I-91, roads such as that that are not

16   subject to commercial development.

17          CHAIRMAN KATZ:  Is it fair to say that

18   Route 123 in New Canaan is not one of these?

19          MR. DRDA:  Yes.

20          CHAIRMAN KATZ:  Okay.

21          MR. MARCONI:  So basically roads that have

22   driveways on them and entrances to businesses and so on

23   ordinarily would not be covered by that line?

24          MR. DRDA:  That's correct.

188
HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1               MR. MARCONI:  Okay.  If we go to the first

2      full sentence of the memo where it says the placement of

3      a telecommunications tower must be far enough away from a

4      State of Connecticut roadway to protect the traveling

5      public should the tower ever collapse, how do you measure

6      that, if I can ask?  Is it --

7               MR. DRDA:  Well again, this comment went

8      out without my knowledge --

9               MR. MARCONI:  Okay --

10              MR. DRDA:  -- but that would be the height

11     of the tower, the fall zone of the tower itself.  So if a

12     tower is 170 feet tall, then it would be 170 feet from

13     the edge of the right-of-way.

14              MR. MARCONI:  Is that what you mean by a

15     minimum distance from the roadway of the tower height is

16     required?

17              MR. DRDA:  Yes.

18              MR. MARCONI:  Okay.

19              MR. ASHTON:  More specifically, do you

20     disavow that comment?

21              MR. DRDA:  Well, that would be, you know,

22     more or less in line with the Commissioner of the

23     Department of Transportation.  You know, I don't have the

24     authority to speak on that at this hearing.

189

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1            CHAIRMAN KATZ:  So you're saying it's site

2    specific?

3            MR. DRDA:  Every -- every tower should be

4    reviewed specifically and is conducted under a review

5    process, so -- I mean that would be applied to the

6    specific application if that's what you're saying.

7            MR. ASHTON:  Does -- does that apply to

8    utility poles along the roadway?

9            MR. DRDA:  You see that gets into DPUC

10   issues and, you know, I'm not the expert for the DOT to

11   talk in those terms.

12           CHAIRMAN KATZ:  That's fine.  That's --

13           MR. MARCONI:  I do --

14           CHAIRMAN KATZ:  -- asked and answered.

15           MR. MARCONI:  I do want to ask, the memo

16   of October 16, 2003, does this state basically Department

17   of Transportation policy, a regulation, or statutes, or

18   none of them?

19           MR. DRDA:  I'm sorry, could you repeat --

20           MR. MARCONI:  In other words -- in other

21   words, the statements that are in this October 16, 2003

22   memo, the memo that's date stamped that, does this state

23   requirements of statute, does it state requirements of a

24   regulation, or is it basically DOT policy or entirely

190

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    something else?

2                    MR. DRDA:  Well as far as the non-access

3    line --

4                    MR. MARCONI:  Right.

5                    MR. DRDA:  -- that is per our Connecticut

6    regulations.

7                    MR. MARCONI:  Okay.

8                    MR. DRDA:  Alright.

9                    MR. MARCONI:  DOT regulations?

10                   MR. DRDA:  What's that?

11                   MR. MARCONI:  DOT regulations?

12                   MR. DRDA:  Yes.

13                   MR. MARCONI:  Okay.

14                   MR. ASHTON:  But where you don't have non-

15   access lines, is that a fair reflection of DOT policy by

16   regulations, statute, or policy for the route 123's, for

17   the route 372's, for the --

18                   MR. DRDA:  Well, the -- Route 123 and 372,

19   those -- those are highways with permitted access.  You

20   know, there's a permit procedure.  You have to go through

21   permit procedures and apply for a permit and it will be-

22   - you know, there's a review process that goes with that

23   and it's reviewed for traffic issues and--

24                   MR. ASHTON:  I think we're talking across

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

191

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1     purposes a little bit.  I'm talking about fall zones.

2                     CHAIRMAN KATZ:  Yeah.

3                     MR. TAIT:  Where do you find the

4     regulation or a policy -- where do you find the authority

5     to say that nothing can fall over the road outsidethe

6     fall zone?

7                     MR. DRDA:  Well again, I was making a

8     comment as to the non-break -- or the non-access and

9     regulations concerning that.  With respect to the fall

10    zone, again that would be up to my Commissioner of the

11    DOT to make that --

12                    MR. TAIT:  It is not in statute, it is not

13    in regulation?

14                    MR. DRDA:  You know, it -- I'm not aware

15    of any, but again that would have to go through the

16    review process in accordance with our --

17                    MR. TAIT:  Where did this --

18                    MR. DRDA:  -- permit regulations.

19                    MR. TAIT:  Where did this particular

20    requirement come from?  You didn't put it on there.  Did

21    DOT put it on there, somebody working for DOT?

22                    MR. DRDA:  Somebody within the DOT put it

23    on there.  It did not come through me.

24                    MR. TAIT:  And you do not know where the

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

192

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    authority for that statement rests?

2                    MR. DRDA:  At this time, no.

3                    MR. TAIT:  Are you aware that in all of

4    our dockets, which are now are up to over 200, we have

5    never gotten that comment from DOT on any of our dockets,

6    that there's any requirement on the fall zone?  This is

7    the first time we've gotten it.  Can you explain that?

8                    MR. DRDA:  Well again, as I, you know,

9    stated when I opened up this hearing, these comments came

10   out of another bureau.  There's four bureaus within the

11   DOT.  These comments were not written by me.  My name was

12   put on here.  I had no knowledge of these comments going

13   out --

14                   MR. TAIT:  So you --

15                   MR. DRDA:  -- under my name.

16                   MR. TAIT:  So you personally disavow them

17   --

18                   MR. DRDA:  Well --

19                   MR. TAIT:  What I want to know is whether

20   -- are these DOT requirements?  And if so, where is that

21   requirement found?

22                   MR. DRDA:  I --

23                   MR. TAIT:  Can your attorney help you on

24   the -- is it in the law somewhere that we don't know

193
HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1        about?

2                        MR. DRDA:  I don't know.  I mean, again,

3        that falls outside of my --

4                        MR. TAIT:  Okay.  So all you're saying is

5        that you disavow them, but you do not know whether or not

6        they are valid DOT requirements?

7                        MR. DRDA:  That's correct.

8                        MR. WILENSKY:  Based on what you're saying

9        then with your signature on here, which you have nothing

10       to do with -- in other words, somebody put your -- and

11       maybe your signature isn't on here, I don't know, but

12       your name is there -- in other words, this paper is

13       worthless then.

14                       MR. DRDA:  Again, this document was sent

15       out without my knowledge.  My name was placed on here.

16       It was sent out in another party of the DOT --

17                       MR. TAIT:  We aren't looking to find fault

18       with you, sir.  We are looking to find out whether this

19       is a valid DOT requirement or it's just made up by

20       somebody and do we -- should we take it in as a

21       consideration or can we ignore it.

22                       MR. DRDA:  As far as the Office of

23       Maintenance is concerned, we're concerned with any

24       development, any facilities located along our state

194

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1    highway system.  And again, we would have to refer to the

2    permit regs and a review of those permit regs and how

3    each individual case applies to those regs with respect

4    to --

5                        MR. TAIT:  This is not --

6                        MR. DRDA:  -- any facility.

7                        MR. TAIT:  This is not an individual

8    requirement.  This is a flat requirement that it cannot

9    extend over the line, beyond the fall zone.  That's not

10   discretionary, that's -- is that or is that not DOT

11   policy?

12                       MR. DRDA:  Again, I can't speak for DOT

13   policy, that would be up to the Commissioner.

14                       MR. TAIT:  Is DOT aware that after this

15   hearing closes, you have 30 days to comment on the

16   record? And I would certainly hope that DOT would comment

17   definitively whether or not there is such a policy.  Our

18   state statute says after this hearing, you have 30 days

19   for state agencies to file comments.  This is a question

20   -- if you get it sooner, that would be better, but we may

21   close today and we may need it.

22                       MR. DRDA:  Yeah, I understand.

23                       MR. TAIT:  Mr. Humes, do you have some

24   cross-examination?

195

HEARING RE: OMNIPOINT FACILITIES NETWORK 2
NOVEMBER 10, 2003

1          MR. HUMES:  I do.  Mr. Drda, with respect

2     to the first comments that came from DOT, which you have

3     indicated were sent without your knowledge, they were

4     dated October 7th, do you recall those comments?

5          MR. DRDA:  Yes.

6          MR. HUMES:  Do you recall receiving an e-

7     mail from me shortly after?

8          MR. DRDA:  Yes, I do.

9          MR. HUMES:  I think it might have been

10    October 10th -- where's that e-mail -- now in that e-mail

11    you indicated that the comments were sent without your

12    knowledge and without your pemission.  Is that a fair

13    summary of your e-mail?

14         MR. DRDA:  That is correct.

15         MR. HUMES:  And you also said that you

16    spent the afternoon trying to track down who from DOT

17    sent those comments, correct?

18         MR. DRDA:  Yes, that's correct.

19         MR. HUMES:  Who was the employee of DOT

20    that sent those comments?

21         MR. DRDA:  Miss Donna Weaver.

22         MR. HUMES:  Did you communicate with Donna

23    Weaver about the comments that were sent?

24         MR. DRDA:  Yes, I did.

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102