FILED

2003 DEC -1  A 9: 43

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMNIPOINT COMMUNICATIONS, INC., and OMNIPOINT FACILITIES NETWORK 2, L.L.C., | : : : | Civil Action No. 3:03-cv-0900(AWT) |
| Plaintiffs, | : : | |
| vs. | : : | |
| THE COUNTRY CLUB OF NEW CANAAN, INC., | : : : | |
| Defendant. | : | NOVEMBER 26, 2003 |

## REPLY TO
## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Country Club of New Canaan, Inc. ("CCNC") replies to Omnipoint's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Memorandum"). CCNC offers this reply: (1) to emphasize that Omnipoint has failed to identify any undue hardship that would result if this lawsuit is stayed; (2) to respond to Omnipoint's accusation that CCNC has attempted to mislead the Court; and (3) to highlight Omnipoint's misplaced arguments concerning whether this action is ripe for adjudication.

## I. FACTUAL BACKGROUND

1. On or about October 7, 2003, CCNC counsel received via facsimile a copy of a memorandum ("DOT Memorandum") submitted to the Connecticut Siting Council from the Connecticut Department of Transportation ("DOT"). The DOT Memorandum described certain DOT policies relating to the placement of telecommunications towers ("Tower(s)") in Connecticut. Specifically, the DOT Memorandum stated three policies: (1) The Office of Maintenance must have adequate time to review any future proposals for Towers; (2) Towers must be located a minimum distance of the tower height from state roadways; and (3) there can be no access to Towers from the state roadway.

2. On October 16, 2003, CCNC counsel spoke to Mr. Charles Drda of the DOT about the contents of the DOT Memorandum. Mr. Drda informed CCNC counsel that the DOT Memorandum contained accurate statements of DOT policy, but that the portion of the DOT Memorandum relating to access from a roadway was inaccurate when applied to Omnipoint's application ("Application") to locate a Tower on property it purports to lease from CCNC ("Premises"). An affidavit of Attorney Christoffel Krediet dated November 26, 2003 ("Aff'd") describing the conversation is attached as <u>Exhibit 1</u>.

3. Relying on Mr. Drda's statements that the DOT Memorandum accurately stated DOT policy with respect to tower distance, CCNC counsel carefully drafted its

Affidavit of William Heyn and its Motion to Dismiss to incorporate only the Tower distance and review period issues that had been directly confirmed with the DOT.

## II.    ARGUMENT

### A.    Omnipoint has failed to identify undue hardship to justify continuing this lawsuit.

While Omnipoint identifies more clearly in its Memorandum the damages it alleges it has already sustained or it may later sustain, it again fails to identify any damages it may incur if this action is stayed. Omnipoint argues that CCNC has breached its alleged duty to cooperate and that this duty commenced prior to the commencement of the lease term. However, as CCNC has withdrawn its objection from the Siting Council, and Omnipoint is not pressing for any immediate relief relating to this alleged duty to cooperate, a stay of these proceedings is appropriate.

Indeed, at this point with the Siting Council hearing closed, there is no relief Omnipoint can reasonably seek until there is a ruling by the Siting Council. Or, stated differently, Omnipoint has not and can not identify any undue hardship that would result if this action is stayed until there is a ruling by the Siting Council. While Omnipoint's Memorandum may have identified alleged damages that make the granting of a Motion to Dismiss problematic, it has again provided the court with no factual basis for finding

undue hardship sufficient to justify the premature adjudication if its claim. Therefore, CCNC hereby renews its request for a stay until the Siting Council has ruled.

### B. Omnipoint's accusation that CCNC attempted to mislead the Court is inaccurate.

Omnipoint's false accusation that CCNC attempted to mislead the Court is completely without justification and serves only to divert attention from the real issue: that Omnipoint's action is not ripe for adjudication. CCNC did not mislead the Court in that: (1) CCNC relied on its own investigation of the DOT Memorandum; (2) CCNC limited its use of the DOT Memorandum to the accurate statements of DOT policy as applied to Omnipoint's Application; and (3) CCNC never claimed that Mr. Drda was the author of the Memorandum.

Prior to receiving Attorney Humes' objection to the contents of the DOT Memorandum, CCNC counsel made its own investigation of the statements contained in the DOT Memorandum. *(Exhibit 1, Aff'd at ¶s 6-11).* Specifically, CCNC counsel spoke with Mr. Charles Drda about the contents of the DOT Memorandum and its applicability to Omnipoint's Application before the Siting Council. Based on this investigation and Mr. Drda's representations, CCNC counsel concluded that certain portions of the DOT Memorandum were accurate statements of DOT policy as applied to Omnipoint's Application. Specifically, Mr. Drda confirmed that the portion of the DOT Memorandum

requiring a Tower to be a minimum distance from a state roadway ("Tower set-back requirement") was an accurate statement of DOT policy and was applicable to Omnipoint's Application. *(Exhibit 1, Aff'd at ¶s 9 and 11).*

Although CCNC counsel received Attorney Humes' objection to the Connecticut Siting Council in a different proceeding, CCNC relied on its own investigation of the DOT Memorandum in drafting its Motion to Dismiss. Notably, CCNC only relied on the DOT Memorandum to the extent it reflected accurate statements of DOT policy as applied to Omnipoint's Application for the Premises.[1] Specifically, CCNC limited its references to the DOT Memorandum to the Tower set-back requirement and DOT's request for an adequate review period. CCNC did not make a single reference to the portion of the DOT Memorandum that precluded access from state highways. *See Affidavit of William Heyn dated October 22, 2003 at ¶s 17 and 18 (referring only to the DOT review period and the tower distance requirement)*; *See also CCNC's Motion to Dismiss at ¶s 4 and 10 (referring only to the DOT review period and the tower distance

---

[1] On information and belief, a second DOT Memorandum confirming the DOT policies with respect to the Tower set-back requirement and an adequate DOT review period was submitted to the Siting Council just prior to the November 10, 2003 hearing on Omnipoint's Application. Omnipoint now claims that Mr. Drda has disavowed the second DOT Memorandum at the Siting Council proceeding. CCNC has no way of confirming this information, as CCNC was not a party to the Siting Council proceeding, and CCNC was not present at the November 10, 2003 hearing. Nevertheless, the fact that Mr. Drda may have denied authorship of the second memorandum falls far short of establishing that the DOT Memorandum misrepresents DOT policy.

*issue)*. Given CCNC's careful use of the contents of the DOT Memorandum, CCNC by no means attempted to mislead the Court.

Finally, CCNC never once asserted that Mr. Drda was the author of the Memorandum. Rather, CCNC viewed the DOT Memorandum as a statement of DOT policy for which Mr. Drda was the contact person. Although CCNC was aware that Mr. Drda was not the author of the DOT Memorandum, CCNC was informed by Mr. Drda that the Tower set-back requirement was an accurate statement of DOT policy, and could appropriately be applied to Omnipoint's Application for the Premises. *(Exhibit 1, Aff'd at ¶s 9 and 11)*.

Despite the *ad hominem* attack by Omnipoint's counsel to the contrary, CCNC diligently investigated the circumstances surrounding the DOT Memorandum, confirmed which of its contents were accurate statements of DOT policy, and drafted its Motion to Dismiss accordingly. The mere fact that Mr. Drda purportedly has denied authorship of the DOT Memorandum does not preclude the fact that the DOT Memorandum contains accurate statements of DOT policy which are applicable to Omnipoint's Application. Omnipoint's claim that CCNC has attempted to mislead the Court is, at best, unprofessional.

### C. **Omnipoint's Memorandum fails to address the issue of ripeness.**

Omnipoint misconstrues CCNC's ripeness argument. Omnipoint's misplaced accusation and arguments concerning lease enforceability fail to address the real issue of whether this action is ripe for adjudication. Omnipoint argues that the purported lease ("Lease") is enforceable and that CCNC's ripeness argument is based on a mistaken interpretation of the Lease. However, Omnipoint fails to acknowledge that the enforceability of the Lease is not the issue before the court. Rather, the issue is whether Omnipoint's *claim* that the Lease is enforceable is *ripe* for adjudication.

By relying on case law to suggest the Lease is enforceable, Omnipoint mistakenly assumes that if it can show that the Lease is enforceable, its claim is automatically ripe for adjudication. *See Omnipoint Memorandum at 6 (citing KMart Corp. v. First Hartford Realty Corp.*, *810 F. Supp. 1316 (D. Conn. 1993)*. Notably, in *KMart Corp.*, the defendants claimed that the instrument at issue never ripened into a contract or alternatively that the instrument's covenants were unenforceable. *Id. at 1324*. The *KMart* decision did not address whether the underlying contract issue was ripe for adjudication. *Id*. Therefore, Omnipoint's reliance on the *KMart* decision is misplaced

and fails to address the issue of ripeness.[2]  Consequently, Omnipoint has been unable to show that its claims are ripe for adjudication.

Dated at Darien, Connecticut this 26th day of November, 2003.

```
                    THE DEFENDANT
                    THE COUNTRY CLUB OF NEW CANAAN, INC.

       BY:          _____
                    MARK R. CARTA (ct-06645)
                    Rucci, Burnham, Carta & Edelberg, LLP
                    30 Old Kings Highway South
                    Post Office Box 1107
                    Darien, Connecticut 06820
                    Telephone (203) 899-3300
                    Facsimile (203) 655-4302
                    Email: mcarta@rbce.com
```

---

[2] Omnipoint's other arguments, largely identical to its arguments in its Memorandum Of Law In Opposition To Defendant's Motion To Stay, have been addressed in CCNC's Reply to Omnipoint's Memorandum Of Law In Opposition To Defendant's Motion To Stay dated October 31, 2003, and need not be repeated here.

8

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing Motion to Stay was sent, U.S. mail, postage prepaid, on this 26th day of November, 2003, to the following:

Dennis F. Kerrigan, Jr., Esq.
Brian O'Donnell, Esq.
Jessica A. Ballou, Esq.
LeBoeuf, Lamb, Green & MacRae
Goodwin Square - 225 Asylum Street
Hartford, Connecticut 06103

_____
MARK R. CARTA (ct-06645)