UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMNIPOINT COMMUNICATIONS, INC., and OMNIPOINT FACILITIES NETWORK 2, L.L.C., | : : : | Civil Action No. 3:03-cv-0900(AWT) |
| Plaintiffs, | : : | |
| vs. | : : | |
| THE COUNTRY CLUB OF NEW CANAAN, INC., | : : : | |
| Defendant. | : | NOVEMBER 26, 2003 |

## AFFIDAVIT OF CHRISTOFFEL KREDIET

*STATE OF CONNECTICUT* )
                           ) ss: at Darien this 26th day of November, 2003
*COUNTY OF FAIRFIELD* )

    1.   I am over the age of eighteen years and understand the obligations of an oath.

    2.   I have personal knowledge of the facts and circumstances related herein, and the facts set forth are true to the best of my knowledge and belief.

    3.   I am an attorney at the law firm of Rucci, Burnham, Carta & Edelberg, LLP ("RBCE").

4.   RBCE represents The Country Club of New Canaan, Inc. ("CCNC") in an action that involves a dispute over the validity of a purported lease agreement ("Lease") between CCNC and the Plaintiff, Omnipoint Communications, Inc. and Omnipoint Facilities Network 2, L.L.C. ("Omnipoint"), for a 400 square foot (20' by 20') parcel of land owned by CCNC ("Premises").

5.   On or about October 7, 2003, RBCE received via facsimile a copy of a memorandum setting forth comments from the Connecticut Department of Transportation ("DOT") to the Connecticut Siting Council relating to the suitability of the Premises for a telecommunications facility ("DOT Memorandum").

6. On October 16, 2003, I spoke to Mr. Charles Drda of the DOT about the contents of the DOT Memorandum.  Mr. Drda informed me that although he was not the author of the DOT Memorandum, the DOT Memorandum was sent by someone in his office.  Mr. Drda explained that he was identified in the

DOT Memorandum as the contact person, but it had been sent without his knowledge.

7. Mr. Drda confirmed that the DOT Memorandum was sent by another DOT representative. He further explained that the DOT Memorandum was based on a memorandum submitted in a different Siting Council proceeding.

8. Mr. Drda also explained that the portion of the DOT Memorandum relating to access to the Premises not being permitted over a state roadway was inaccurate as applied to Omnipoint's application to construct a telecommunications tower ("Tower") on the Premises.

9. However, Mr. Drda confirmed that the portion of the DOT Memorandum that recited the DOT requirement that the Tower be a minimum distance equal to no less than the tower height from state roadways was an accurate statement of DOT policy.

10. Mr. Drda went on to inform me that DOT was in the process of preparing a revised memorandum to submit to the Connecticut Siting Council in connection with Omnipoint's

application, and that this revised memorandum would be similar to the first DOT Memorandum, except that the portion relating to access would be omitted.

11. Mr. Drda also confirmed in our discussion that the portion of the DOT Memorandum relating to the distance a Tower must be from a state roadway would be included in the revised memorandum. Mr. Drda specifically informed me that the DOT minimum distance guideline was applicable to the Tower and included Route 123.

Dated at Darien, Connecticut this 26th day of November, 2003.

_____
Christoffel Krediet, Affiant

Subscribed and sworn to before me this 26th day of November, 2003.

_____
Notary Public
My Commission Expires On:

ANNE B. KNIFFIN
Notary Public, State of Connecticut
My Commission Expires Jan. 31, 2006

4